**PETER ANDERSON**

v.

**RAMON DAVILA, KENNETH MAPP, ROBERT SOTO, ELTON LEWIS, and GOVERNMENT OF THE VIRGIN ISLANDS d/b/a VIRGIN ISLANDS POLICE DEPARTMENT, Appellants**

No. 96-7658

United States Court of Appeals for the Third Circuit

September 10, 1997

498

Julio A. Brady, Esq., (Attorney General), and Ernest F. Batenga, Esq., (argued), (Assistant Attorney General), St. Croix, U.S.V.I., *for Appellants*

Lee J. Rohn, Esq., and Maurice Cusick, Esq., (argued), (Law Offices of Rohm & Cusick), St. Croix, U.S.V.I., *for Appellee*

BECKER, ROTH and WEIS, *Judges*

## OPINION OF THE COURT

ROTH

This case results from the Virgin Islands Police Department's

499

surveillance of Peter Anderson and his attorney, Lee Rohn, in retaliation for Anderson's filing of an employment discrimination suit against the Department, his former employer. At issue is the district court's permanent injunction forbidding the Police Department from further surveillance of Anderson and Rohn without the court's prior approval.

Peter Anderson, a former police officer in the Virgin Islands Police Department, filed a lawsuit against the Government of the Virgin Islands and its officers on the ground that he suffered employment discrimination. On the day after a local newspaper reported that Anderson was filing a lawsuit against his former employer, the Virgin Islands Police Department commenced an intensive investigation of both Anderson and attorney Rohn. Andersen sought a preliminary injunction from the district court, claiming that such surveillance infringed his First Amendment rights. The district court consolidated the motion for preliminary relief with a trial on the merits and issued a permanent injunction terminating all surveillance of Anderson and Rohn. The injunction further required the Police Department to seek the district court's approval, should the Department wish to renew surveillance of either Anderson or Rohn.

The Government appeals the district court's injunction on several grounds. First, it contends that the district court improperly consolidated Anderson's motion for preliminary relief with a hearing on the merits, thus violating the notice requirements under Rule 65 of the Federal Rules of Civil Procedure. Second, the Government claims that the injunction was improperly granted because Anderson failed to demonstrate either a likelihood that he would prevail on the merits or that the government's surveillance threatened irreparable harm. Finally, the Government contends that the district court's injunction is overbroad and interferes with the police department's legitimate investigative operations.

We shall address each of these arguments in turn.

## I. FACTS

Prior to the filing of this lawsuit, Peter Anderson had worked for the Virgin Islands Police Department ("Department") and had

attained the rank of captain in the Department. In January of 1995, the newly elected Governor and Lieutenant Governor of the Virgin Islands placed Ramon Davila in the position of Police Commissioner of the Virgin Islands.[1] Anderson alleges that Davila disliked and harassed him because of his race and place of birth. (Anderson is white and was born in the continental United States). After Davila became Police Commissioner, he allegedly directed a steady stream of threats at Anderson to the effect that he would make Anderson's work environment uncomfortable. In addition, Davila allegedly made false accusations about Anderson, limited his work assignments, interfered with his promotions, and cast racial slurs on him.

On January 22, 1996, while Anderson was still employed by the Police Department, he lodged a complaint with the Equal Employment Opportunity Commission (EEOC) alleging race discrimination by the Virgin Islands Police Department.[2] At his hearing for injunctive relief, Anderson testified that he was subjected to transfers and demotions in retaliation for filing his complaint with the EEOC. On January 23, 1996, Anderson's attorney, Lee Rohn, sent a formal notice to the Governor of the Virgin Islands, communicating Anderson's intention to file suit against the Government and the Department for employment discrimination. Anderson resigned from the Virgin Islands Police Department on January 31, 1996.

On February 22, 1996, a St. Croix newspaper reported that Anderson had lodged a complaint with the EEOC and planned to file suit against the Government of the Virgin Islands for employment discrimination.[3] The front-page newspaper article identified Lee Rohn as Anderson's attorney and reported that Rohn planned

---

[1] The Government of the Virgin Islands operates and controls the Virgin Islands Police Department.

[2] The EEOC complaint states:

"Police Commissioner Ramon Davila has entered into a pattern and practice of racial discrimination against me which has included public ridicule, defamation, slander, discrimination in job assignments, promotions, and pay and discriminatory disciplinary actions. This is also motivated by the fact that I am not a native born Virgin Islander." *Supplemental Appendix*, at 1.

[3] The newspaper article was entitled, "Retired Police Captain Suing Gov't Over Discrimination."

to file a civil lawsuit on Anderson's behalf in April 1996. The article also quoted Anderson several times, including his belief that a "pattern of discrimination" had been directed at him by Commissioner Davila, that the color of his skin had hurt him "both professionally and personally" within the police department, and that he was the subject of "incredible malicious slander and maltreatment."

Within a few days of the publication of this article, the Police Department commenced an extensive investigation of Anderson and Rohn. This investigation included visual surveillance of Anderson talking to his attorney, as well as photographs of both Anderson's home and Rohn's Jeep. In addition, on February 23, 1996, one day after the publication of the article in the *St. Croix Avis*, Robert Soto, the Assistant Director of the National Strike Force ("NSF") of the Virgin Islands ordered a National Crime Information Computer ("NCIC") check of Rohn.

Anderson learned of the Police Department's surveillance operation from an anonymous source who placed Department photographs on the front seat of Anderson's car. The EEOC had issued Anderson a right to sue letter on July 26, 1996. On September 6, Anderson filed suit against the Department, the Government of the Virgin Islands, Ramon Davila and several other officials. After receiving the anonymous evidence of the Police Department's investigation, Anderson amended his complaint to include allegations of unconstitutional and retaliatory surveillance by the Department. In addition, on September 19, Anderson filed a motion for a temporary restraining order and a preliminary injunction.[4]

On October 2 and 3, the district court held an evidentiary hearing on Anderson's motion for preliminary relief. At this hearing, Anderson requested an order enjoining the Department from further surveillance of either him or his attorney and also asked for an order prohibiting the Department from retaliating against officers or agents testifying on his behalf at the hearing.

Throughout the hearing, the Police Department asserted that its investigation was not carried out in response to Anderson's

---

[4] Anderson sought relief under the First and Fourteenth Amendments of the United States Constitution, which are applicable to the Virgin Islands by way of the Revised Organic Act of 1954. *See* 48 U.S.C. § 1561 (1995).

employment discrimination complaint. Instead, the Department maintained that it had no intention of investigating Anderson at all. Rather, the real target of their surveillance operation was Anderson's attorney, Lee Rohn, whose boyfriend had been sighted several months earlier, in December 1995, by the Virgin Islands National Strike Force (NSF) driving her Jeep through a known drug-dealing area. According to the Department, Rohn's boyfriend, Curtis Jacobs, had been implicated in illegal drug-dealing activity, and his use of her Jeep justified the Police Department's surveillance of its owner. The Police further explained that the photographs of Anderson were inadvertently taken by officers who mistook Anderson's home for Rohn's.

The Police Department presented little evidence to support its theory. For example, the Department was unable to demonstrate that it had investigated Lee Rohn or her Jeep in the months immediately following the Department's sighting of Curtis Jacobs. Moreover, there was testimony that the NSF 's Assistant Director, Robert Soto, was pleased with the Department's surveillance operation and had remarked "this is great" when he learned about the photographs of Anderson and Rohn.

The district court concluded at the end of its hearing that Anderson was entitled to injunctive relief. Not satisfied with the Department's justification for its surveillance, the district court concluded that "the defendants . . . engaged in surveillance of Peter Anderson and Lee Rohn as a direct result of the lawsuit Mr. Anderson filed." *Anderson v. Government of the Virgin Islands*, No. 1996-118 (D.V.I. Oct. 16, 1996) at 8. The district court further elaborated:

> The initial efforts to determine the ownership of the red Jeep and Mr. Jacob's connection to it were properly based upon reasonable suspicion arising from information received in an ongoing criminal investigation of drug activity. *By late February 1996, however, what may have started as a proper investigation was converted and perverted into an effort to "dig up dirt" on Rohn and her client in response to the lawsuit.* It is simply too large a coincidence that the NCIC check performed on Lee J. Rohn was requested on February 23, 1996, the day after the story

about the filing of Anderson's lawsuit against the defendants appeared in the newspaper. It also defies logic that the photos of Peter Anderson's house were taken "by mistake," as the defendants would have us believe.

*Anderson*, No. 1996-118 at 13 (emphasis provided). Having concluded that the Police Department's surveillance operation was improper and had been initiated in response to Anderson's lawsuit, the District Court ordered the Police Department, "TO CEASE ALL SURVEILLANCE EFFORTS AGAINST PETER ANDERSON AND LEE J. ROHN unless and until they seek and obtain approval from this Court, based upon an appropriate showing that reasonable suspicion or probable cause exists for such investigation." *Anderson*, No. 1996-118, order at 2. Prior to issuing its order, the court noted that it considered the hearing to be a trial on the merits and that the injunction was therefore permanent.

The present appeal followed. While the appeal was pending, the Government requested a stay of the district court's permanent injunction. On November 27, 1996, the district court denied the Government's request. In doing so, the court opined that a stay pending appeal was unnecessary because its injunction was not appealable. The court further held that its notice regarding the hearing was adequate and that the Government was unlikely to prevail on the merits. *See Anderson v. Government of the Virgin Islands*, 35 V.I. 314, 947 F. Supp. 894 (D.C.V.I. 1996).

## II. JURISDICTION

Before we reach the merits of the Government's appeal, we must first decide whether we have jurisdiction to review the district court's injunction. The Government contends that we may review the district court's injunction pursuant to 28 U.S.C. § 1292, which provides jurisdiction over appeals from:

(1) Interlocutory orders of the district courts of the United States . . . and the District Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions except where a direct review may be had in the Supreme Court. . . .

28 U.S.C. § 1292(a)(1). Anderson disagrees and argues that the District Court's injunction does not fall within Section 1292's jurisdictional grant because its subject matter (the propriety of the Department's surveillance operation) differs from the crux of Anderson's employment discrimination claim.

Anderson brought a motion for preliminary relief under RULE 65(a) of the FEDERAL RULES OF CIVIL PROCEDURE and the District Court expressly ruled on and granted that motion. Ordinarily, our analysis should end here. "When a claimant makes a FED.R.CIV.P. 65(a) motion for a preliminary injunction, and the court expressly rules on it, there is no difficulty in identifying the order as falling within Section 1292(a)(1). Such explicit orders must fall within the plain language of the section." *Cohen v. Board of Trustees of the University of Medicine and Dentistry of New Jersey*, 867 F.2d 1455, 1466 (3d Cir. 1989). Anderson nevertheless contends that his motion for relief differed from a "routine" RULE 65 motion because the relief requested in that motion (the cessation of surveillance) was only "incidental" to his employment discrimination claim. Anderson supports his argument with the district court's prediction that its order is not appealable because its relief is "incidental and unrelated to the underlying merits of the employment discrimination complaint." *Anderson*, No. 1996-118, at 44. *See also Anderson*, 947 F. Supp. at 900. The district court, however, does not have the last word on this matter. *Cf. Bailey v. Systems Innovation, Inc.*, 852 F.2d 93, 96 (3d Cir. 1988) (district court's characterization of order not dispositive).

■ To be appealable under Section 1292, an order need not grant all of the relief requested in a complaint. Rather, an order is treated as "injunctive" within the meaning of Section 1292(a)(1) when it adjudicates even some of the relief sought in the complaint. "If the order grants part of the relief requested by the claimant, the label put on an order by the district court does not prevent the appellate tribunal from treating it as an injunction for purposes of section 1292(a)(1)." *Cohen*, 867 F.2d at 1466 (emphasis provided). Thus, the district court's view of its own order is irrelevant. In addition, the relief granted by the district court need not encompass the entire (or even the most "important" part of) the complaint. So long as the order touches the merits of part of the complaint, it will fall

505

within Section 1292's grasp, assuming it is also directed at a party and can be enforced by contempt of court. *See United States v. Santtini*, 963 F.2d 585, 591 (3d Cir. 1992). *See also* 16 CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE § 3922.

▰▰ After comparing Anderson's First Amended Complaint with the subject matter of the district court's order, we conclude that the district court's injunction is appealable under Section 1292. Paragraphs 19-25 of Anderson's First Amended Complaint explicitly describe the Virgin Islands Police Department's surveillance of Anderson and his attorney. Count VIII and Count XII of the First Amended Complaint incorporate these allegations and demand damages for and injunctive relief from such conduct. Finally, Anderson's own appellate brief states that "the criminal and intentional Constitutional violations committed by these Defendants/Appellants will be presented to the jury in this matter at trial." *Anderson Brief*, at 25. Thus, we must conclude that the district court's injunction grants at least a portion of the relief requested by Anderson in his Complaint and deals with at least a portion of the merits of the claims contained therein. As a result, it is indeed "injunctive" within the meaning of Section 1292 and we may exercise appellate jurisdiction to review it.[5]

## III. THE HEARING

The Government alleges two procedural flaws with the district court's hearing on Anderson's motion for preliminary relief. First, the Government claims that the district court failed to provide adequate notice of the hearing itself. Second, the Government claims that the district court provided inadequate notice of its intention to consolidate the preliminary hearing with a trial on the merits. We address each argument separately.

---

[5] Anderson also contends that the District Court's order is unappealable because the Government has failed to demonstrate serious or irreparable harm originating from the order. The "serious or irreparable harm" standard, however, applies only when the order in question fails to meet the traditional requirements of Section 1292 (i.e., it fails to grant at least some of the relief requested by the complaint). *See e.g. Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S. Ct. 993, 996, 67 L. Ed. 2d 59 (1981) (order that has the practical effect of *denying* injunctive relief not appealable unless appellant demonstrates serious or irreparable harm necessitating immediate appeal); *Cohen*, 867 F.2d at 1467 (appellant need not demonstrate serious or irreparable harm when order granting RULE 65(a) relief meets traditional requirements of Section 1292).

## A. Notice of the Preliminary Hearing

We begin our discussion with a review of Rule 65(a), which governs the procedure for preliminary injunctions. Federal Rule 65(a)(1) provides that a preliminary injunction may not be issued without proper notice to the adverse party.[6] The Supreme Court has observed that the Rule requires, at the very least, "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 432 n. 7, 94 S. Ct. 1113, 1121 n.7, 39 L. Ed. 2d 435 (1974), *citing Sims v. Greene*, 161 F.2d 87 (3d Cir. 1947). In other contexts, the Court has stressed that notice is not merely a procedural nicety, but rather, a fundamental aspect of procedural due process under the Constitution:

> For more than a century the central meaning of proce-dural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaning-ful time and in a meaningful manner."

*Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 1994, 32 L. Ed. 2d 556 (1972) (citation omitted). *See also Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991).

Congress has not defined with particularity the amount or formality of notice required under Rule 65. Some courts have grafted Rule 6(d)'s five-day formal notice requirement onto Rule 65(a).[7] *See e.g. Parker v. Ryan*, 960 F.2d 543, 544 (5th Cir. 1992). *See also* 11A Charles A. Wright, et. al., Federal Practice & Procedure 2d, § 2949 at 213 (1995). Other courts, however, have adopted a more flexible approach by measuring the propriety of notice according to the totality of circumstances. *See e.g. Illinois ex rel. Hartigan v.*

---

[6] Rule 65(a)(1) states, "No preliminary injunction shall be issued without notice to the adverse party."

[7] Rule 6(d) states, in pertinent part:

A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than 5 days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court.

*Peters*, 871 F.2d 1336, 1340 (7th Cir. 1989) ("we leave the question of what constitutes sufficient notice primarily to the district court's discretion"); *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986) (sufficiency of prior notice "is a matter left within the discretion of the trial court").

 The Government maintains that this Court should follow the Fifth Circuit and graft RULE 6(d)'s five-day formal notice requirement onto RULE 65(a). Since a magistrate judge orally notified the defendants' counsel on September 27, 1996, that the District Court would hear testimony on Anderson's motion on Tuesday, October 2, 1996, the Government would prevail under this standard because the district court failed to provide five business days notice of the preliminary hearing under RULE 6(d).[8] We question, however, the usefulness of a rigid application of RULE 6(d)'s five day formal notice requirement to motions seeking preliminary injunctions. The purpose of a preliminary injunction is to preserve the status quo, not to decide the issues on their merits. Neither the "fair opportunity" standard stated in *Granny Goose* nor the language of RULE 65(a) demands a formal five-day requirement for notice. Moreover, even assuming arguendo that RULE 6(d) applies in this instance, we nevertheless decline to invalidate the injunction on the ground that the Government received improper notice.

First, RULE 6(d) itself allows a district court to shorten the notice period when circumstances warrant an expedited hearing. *See Levine v. Torvik*, 986 F.2d 1506, 1519 (6th Cir. 1993) (court may shorten notice period "for good cause shown"); *Parker*, 960 F.2d at 546 (court has power to shorten notice, but should indicate that it is consciously doing so in its order). In this case, the petitioner set forth a claim that the Government of the Virgin Islands was abusing its authority in retaliation for his filing of an employee discrimination suit. Given the serious nature of this claim, and its involvement of First Amendment freedoms, the district court was amply justified in scheduling a prompt hearing. Although as a general rule, courts should use this exception only sparingly, we

---

[8] Weekend days do not count for purposes of formal notice under RULE 6(d). *See* FED.R.CIV.P. 6(a).

508

cannot say the district court's application of it in this case constituted an abuse of discretion.

Second, numerous courts have held that RULE 6(d)'s formal notice may be set aside when the adverse party has sufficient actual notice of an impending hearing. See Parker, 960 F.2d at 545. The Government had ample "actual" notice of Anderson's motion for preliminary relief. Anderson filed his First Amended Complaint on September 11, 1996. Count IX of that Complaint requested injunctive relief from the Police Department's surveillance operation. On September 19, 1996, Anderson filed a Motion for a Temporary Restraining Order and Preliminary Injunction. The defendants in this action were served with copies of the Amended Complaint and Motion between the dates of September 19, 1996 and September 26, 1996. The Government's attorneys therefore had approximately two weeks actual notice that it would have to defend its actions at the district court hearing, which commenced on October 2, 1996. These two weeks provided the defendants with a fair opportunity to prepare to explain their actions to the district court.

Because the Government had ample actual notice of the district court's hearing (at least as regards preliminary relief), we will not invalidate the district court's injunction on the ground that the Government lacked sufficient notice of the preliminary hearing.

## B. Notice of Consolidation

Although we hold that the Government had adequate notice of the motion for a preliminary injunction, we do not agree that the Government was given sufficient notice of the district court's intention to treat that motion as a trial on the merits.

Federal RULE 65(a)(2) provides in pertinent part:

> Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application . . . . This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

FED.R.CIV.P. 65(a)(2). Because the scope and procedural posture of a hearing for a preliminary injunction is significantly different from a trial on the merits, the Supreme Court has held that "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1991). According to the Court, a district court should not consolidate a hearing for preliminary relief with a trial on the merits unless the court has given both parties "clear and unambiguous notice" of its intent to do so. *Id*.

■■ The District Court did not inform the Government that it would be issuing a permanent injunction until the end of the second (and final) day of its hearing. This is error. Although the announcement of consolidation after the commencement of a hearing is "not per se improper," the district court nevertheless must allow the parties sufficient notice "to enable them to present all their evidence." *Fenstermacher v. Philadelphia Nat'l Bank*, 493 F.2d 333, 337 (3d Cir. 1974).[9] The record indicates that the district court did not announce its decision to consolidate the motion until it recited its findings at the end of the hearing, when it stated in passing:

> In essence, although we may not have talked about it, it's really a permanent injunction if granted because there won't be any further need for any testimony.

*Hearing Transcript*, (October 3, 1996) at 216. The Government contends that the district court's "notice" of consolidation was insufficient under *Camenisch*. We agree.

---

[9] We further stated in *Fenstermacher* that, "Although we do not find reversible error in [the district court's consolidation], it would be advisable in the future for district courts, when contemplating consolidation of the trial of the action on the merits with the hearing of an application for a preliminary injunction, promptly to notify counsel and request affirmative, on the record, response, especially where jury trial rights may be involved." 493 F.2d at 337.

Our advice to the district courts still stands. To protect the parties' constitutional rights and prevent needless litigation over notice issues, district courts should provide clear and unambiguous notice of their intention to consolidate proceedings under RULE 65(a) *and* should solicit on the record responses from both parties' counsel regarding the propriety of such consolidation.

We cannot label the district court's passing reference "clear and unambiguous" notice as required by RULE 65(a) and *Camenisch*. To the contrary, the district court's ninth-inning announcement afforded the Government no opportunity to prepare and present a full-blown case in its defense. Indeed, the court's late notification contradicted earlier statements that it was simply conducting a hearing to determine whether Anderson was entitled to preliminary relief. *See Hearing Transcript*, (October 2, 1996) at 73-74.

■ ■ Although a district court's consolidation under RULE 65(a)(2) requires proper notice, we ordinarily do not vacate a permanent injunction if the party appealing the judgment is unable to show prejudice. *See H & W Industries, Inc. v. Formosa Plastics Corp.*, 860 F.2d 172, 177 (5th Cir. 1988). Anderson contends that the Government has failed to demonstrate prejudice from the district court's failure to provide notice. We disagree. The hearing lasted only two days. Since Anderson filed his First Amended Complaint on September 19, 1996, the Government had, at most, two weeks to prepare for the hearing. The hearing transcripts reflect that the Government requested a continuance in order to conduct discovery and better develop its case. *See Hearing Transcript*, (October 2, 1996) at 70-76. The Government's attorney indicated that she was concerned that any factual findings made within the context of the hearing might be binding and undermine the defendants' right to a jury trial. *Id.* at 71, 73. The district court denied this request on the ground that the hearing was solely for a preliminary injunction and not a final determination on the merits. The court's denial of the Government's motion for a continuance not only misled the Government by causing it to believe that the court's relief would last no longer than the duration of this litigation, but it also undermined the Government's ability to develop its case. This constituted prejudicial error. *See H & W Indus.*, 860 F.2d at 178 (time allowed for discovery and hearing itself inadequate for consolidated trial on the merits); *Northern Arapahoe Tribe v. Hodel*, 808 F.2d 741, 753 (10th Cir. 1987) (consolidation of proceedings without opportunity to conduct discovery, present additional evidence, or request continuance constituted prejudicial error). A court cannot expedite a hearing, deny a continuance and the opportunity to conduct discovery, and then, after the parties have finished pre-

511

senting testimony, suddenly decide that the hearing was really a trial on the merits after all. This course of action violates well-established notions of due process and cannot be sanctioned by this Court.

Anderson argues that even if the district court failed to provide adequate notice under Rule 65(a)(2), the Government waived this argument by failing to object at the hearing. Again, we disagree. The district court did not state its intention to treat the hearing as a trial on the merits until after all testimony had been taken and all evidence had been submitted. No objection by the Government at such a late stage in the proceedings could have cured the court's failure to provide notice. This case is therefore distinguishable from instances in which a defendant has rejected a court's invitation to conduct a second hearing or where the defendant has neglected to raise the issue at all on appeal. *See Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986) (defendant waived argument when district court, on reconsideration, granted opportunity for second hearing at which defendant could present additional evidence); *DeLeon v. Susquehanna Community School Dist.*, 747 F.2d 149, 152 n.6 (3d Cir. 1984) (waiver of argument against consolidation by party who failed to raise issue before either district or appellate court). Although we agree that ordinarily, a litigant should object to a district court's consolidation immediately, *see K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 913-14 (1st Cir. 1989), we think that an exception is appropriate under the present facts.

The district court prejudiced the Government by failing to give "clear and unambiguous" notice of its intention to consolidate Anderson's motion for a preliminary injunction with a trial on the merits. We therefore hold that to the extent injunctive relief may be appropriate in this case, it is to be construed only as a preliminary and not as a permanent injunction.

## IV. THE INJUNCTION

We now turn to the merits of Anderson's motion for preliminary relief. The Government contends that the district court erred in granting Anderson's motion for preliminary relief because Anderson could not demonstrate irreparable harm or a likelihood

512

of prevailing on the merits of his claim.[10] A preliminary injunction is appropriate when a party demonstrates the following: (1) that he is likely to suffer irreparable injury in the absence of injunctive relief; (2) that he is likely to prevail on the merits. *See Schulz v. United States Boxing Ass'n*, 105 F.3d 127, 131 n.6 (3d Cir. 1997). In addition, the district court may consider the injunction's effect on the adverse party and other interested parties, as well as the general public interest. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175 (3d Cir. 1990); *Arthur Treacher's Fish & Chips Inc. v. A & B Management Corp.*, 689 F.2d 1137, 1143 (3d Cir. 1982).

██ Our review of the legal issues underlying Anderson's motion is plenary. We review the district court's factual findings for clear error and its fashioning of a remedy according to an abuse of discretion standard. *See Northeast Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 61 (3d Cir. 1991).

We will address Anderson's likelihood of prevailing on the merits of his claim first, because it poses the most difficult issue in this case.

## A. Likely to Prevail at Trial

██ Anderson sued the Government under 42 U.S.C. § 1983.[11] To make out a cause of action under Section 1983, Anderson must show that (1) the defendants acted under color of law; and (2) their actions deprived him of rights secured by the Constitution or federal statutes. *See Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).

Count VIII of Anderson's First Amended Complaint states that the Government engaged in "illegal surveillance" of Anderson. In his Motion for a Temporary Restraining Order and Preliminary

---

[10] When we say "prevail on the merits," we refer to Anderson's surveillance claim and not his employment discrimination claim.

[11] Section 1983 provides in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . , subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

42 U.S.C. § 1983.

Injunction, Anderson specifically alleged that the Government's surveillance constituted retaliation for his initiation of the present lawsuit. Following the district court's two-day hearing on Anderson's motion, the district court found the Government's witnesses "completely uncredible" and held that the sole reason for the Government's surveillance of Rohn and Anderson was the filing of Anderson's lawsuit. On appeal, the Government does not dispute this finding of fact. Rather, it contends that, no matter how reprehensible the Government's motives, they do not support *any* claim (injunctive or monetary) for relief under Section 1983. We disagree.

■ The gravamen of Anderson's complaint is the following: the Virgin Islands Police Department commenced an extensive and substantial surveillance operation of him and his attorney solely in response to his filing of an employment discrimination complaint. According to Anderson, the Police Department's retaliatory surveillance is actionable under Section 1983. We agree.

We begin by conceding that the Government's surveillance of individuals in public places does not, by itself, implicate the Constitution. The Government, however, takes this argument one step further by arguing that the Virgin Island Police Department's retaliatory motive in setting up this surveillance operation is irrelevant. According to the Government, this contention is supported by the Supreme Court's decision upholding an Army surveillance operation in *Laird v. Tatum. See Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972). The Government misreads the Court's decision in *Laird*.

In *Laird*, the Court considered the justiciability of a class action suit for injunctive and declaratory relief from the Army's domestic surveillance system, which included the observation of public civilian activity. The plaintiffs' case in Laird was based on the vague fear that the Army might improperly use the information contained in its surveillance reports sometime in the future in an improper fashion. *See Laird*, 408 U.S. at 11, 92 S. Ct. at 2324. Beyond their own discomfort with the notion that the Army was watching them, the plaintiffs were unable to articulate with any specificity the harm that they had suffered or might suffer in the future from the Army's surveillance. The Supreme Court concluded that the

plaintiffs' fear of future misuse of information was too speculative and too unsubstantiated to support a case or controversy under Article III. Consequently, the Court held that, despite the subjective feelings of the individuals whose actions were observed, their First Amendment rights could not be chilled by "the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Laird*, 408 U.S. at 10, 92 S. Ct. at 2324.

This Circuit followed Laird several years later, when we held that police surveillance of public meetings, by itself, was "legally unobjectionable." *Philadelphia Yearly Meeting of Religious Society of Friends v. Tate*, 519 F.2d 1335, 1337-1338 (3d Cir. 1975) (subjective chill from surveillance no substitute for claim of "specific present harm" or "threat of specific future harm").

The Government would have us believe that this case falls within the *Laird* and *Philadelphia Yearly* line of cases. It does not. Unlike *Laird* and *Philadelphia Yearly*, this case involves a pre-existing complaint, lodged with the EEOC, that was reported to be the precursor to an employment discrimination lawsuit that was potentially embarrassing to the defendants. In addition, this case also involves a finding by the district court, unchallenged on appeal, that the Government's surveillance operation was targeted at two individuals, Anderson and his attorney Ms. Rohn, and was initiated solely in response to Anderson's lawsuit. Thus, this case differs greatly from *Laird* and *Philadelphia Yearly* because the harm alleged is more specific and less speculative than the "chilling effect" alleged in those cases. Unlike the plaintiffs in *Laird* and *Philadelphia Yearly*, Anderson has articulated a "specific present harm," which is the Government's retaliation in response to his exercise of protected activity under the First Amendment.

The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights. *See Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977). In the seminal case of *Mt. Healthy*, a non-tenured teacher brought suit against the local school Board when it

declined to renew his contract. *See Mt. Healthy*, 429 U.S. at 276, 97 S. Ct. at 570. The Court held that, even though the teacher lacked any expectation in further employment, the teacher still could make out a claim under the First and Fourteenth Amendments if he could show that the Board fired him in retaliation for speech. As the Court explained:

> Even though [the teacher] could have been discharged for no reason whatever, and had no constitutional right to a hearing prior to the decision not to rehire him. . . he may nonetheless establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms.

*Mt. Healthy*, 429 U.S. at 283, 97 S. Ct. at 574 (citations omitted).

■ Under *Mt. Healthy* and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.[12] This doctrine demonstrates that, at least where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech precedes government action affecting that individual.[13]

■ To prevail on his retaliation claim, Anderson would have to prove three things: first, that he engaged in protected activity;

---

[12] *Mt. Healthy* falls within a larger category of Supreme Court cases known as the "unconstitutional conditions" doctrine, whereby "government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit." *Board of County Commissioners v. Umbehr*, 135 L. Ed. 2d 843, 116 S. Ct. 2342, 2347 (1996), *quoting Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d 570 (1972).

[13] At oral argument and throughout its briefs, the Government argued that its officers' motives were irrelevant under the doctrine of qualified immunity. We think the Government misstates this doctrine. First, because Anderson seeks only injunctive relief at this stage, the doctrine is inapplicable. Second, an official's motive is not irrelevant when it forms an essential element of the underlying tort for which he is being sued. *See Grant v. City of Pittsburgh*, 98 F.3d 116, 124 (3d Cir. 1996) (citing cases in other circuits). In this case, the Virgin Islands Police Department's retaliatory motive is an essential element of Anderson's *Mt. Healthy* claim and is thereby relevant to any disposition of that claim, notwithstanding the doctrine of qualified immunity.

second, that the Government or Police Department responded with retaliation; and third that his protected activity was the cause of the Government's retaliation. Based on the facts in the record, the district court could easily conclude that Anderson was likely to prevail on a First Amendment claim.

First, Anderson's filing of his EEOC complaint and his employment discrimination suit against the Virgin Islands Police Department constituted protected activity under the First Amendment. The Supreme Court has consistently held that an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances. "The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642 (1972). *See also Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).

Numerous claims brought under *Mt. Healthy* — both in this Circuit and in others — have involved fact patterns in which the government took retaliatory action in response to an individual's filing of a lawsuit. In *Millhouse v. Carlson*, a prisoner brought suit against employees of the United States Bureau of Prisons, claiming that they had disciplined him for initiating a civil rights suit. *See Millhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). The district court had dismissed the case on the ground that the prisoner had failed to state a claim upon which relief could be granted. We reversed and held that a prisoner's constitutional right to access was indeed violated when he suffered retaliation in response to his filing a civil rights lawsuit. We explained:

> We read appellant's complaint as alleging that he was subjected to a conspiratorially planned series of disciplinary actions as retaliation for initiating a civil rights suit against prison officials. Such allegations, if proven at trial, would establish an infringement of Millhouse's first amendment right of access to the courts.

*Millhouse*, 652 F.2d at 373. Thus, our holding in *Millhouse* demonstrates that, at the very least, Anderson may have a viable claim against the Police Department and its officials.

517

Our holding in *Millhouse* is not limited to prisoners. In *Bradley v. Pittsburgh Bd. of Education,* we held that a school-teacher could make out a claim against a school board if she could prove retaliation in response to her filing of a lawsuit. *See Bradley,* 910 F.2d 1172, 1177 (3d Cir. 1990) ("An action that would otherwise be permissible is unconstitutional if it is taken in retaliation for the exercise of the right of access to the courts"). Similarly, other Circuits have uniformly held that retaliation for exercise of one's right to access constitutes a violation under the Constitution. *See, e.g., Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310 (9th Cir. 1989); *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422 (8th Cir. 1986).

More generally, under the doctrine of unconstitutional conditions,[14] we have held that official retaliation for the exercise of any constitutional right creates an actionable claim under Section 1983. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990) (doctor's retaliatory charges against prisoner who exercised right to be informed about treatment constituted violation of prisoner's substantive due process rights). Although a plaintiff ordinarily must show that his speech was a matter of public concern to qualify it as protected activity under the First Amendment, *see Connick v. Myers,* 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983), this Circuit has held that this requirement does not apply in cases where the speech itself constitutes the plaintiff's lawsuit. *See San Filippo v. Bongiovanni,* 30 F.3d 424, 434-443 (3d Cir. 1994), *cert. denied,* 513 U.S. 1082, 115 S. Ct. 735, 130 L. Ed. 2d 638 (1995). In *San Filippo,* we held that a plaintiff need only show that his lawsuit was not frivolous in order to make out a prima facie retaliation claim. *Id.*

This case is somewhat different from *San Filippo* because Peter Anderson had not yet filed his lawsuit when the Police Department commenced surveillance of him and his attorney. Nevertheless, the right of access to court doctrine still applies. First, Anderson had already lodged a formal complaint with the EEOC

---

[14] *See* note 12, *supra.*

on January 25, 1996. Second, the record indicates that Ms. Rohn had provided the Government with written notice of her intention to file a claim on behalf of her client as early as January 23, 1996. Finally, the *St. Croix Avis* reported Anderson's intention to file a lawsuit against the Government and the Department on February 22, 1996. We conclude that these actions were sufficient to implicate Anderson's right to petition the government for redress of his grievances.

In justifying our holding in *San Filippo*, we explained the fundamental importance of the right to petition as a check against the government's abuse of power:

When government — federal or state — formally adopts a mechanism for redress of those grievances for which government is allegedly accountable, it would seem to undermine the Constitution's vital purposes to hold that one who in good faith files an arguably meritorious "petition" invoking that mechanism may be disciplined for such invocation by the very government that in compliance with the petition clause has given the particular mechanism its constitutional imprimatur. . . . When one files a "petition" one is not appealing over government's head to the general citizenry; when one files a "petition" one is addressing government and asking government to fix, what allegedly, government has broken or has failed in its duty to repair.

*Id.*, at 442. Our argument in *San Filippo* is particularly applicable to the facts of this case. By lodging a complaint with the EEOC, itself a precursor to his employment discrimination suit, Anderson was petitioning the government to "fix" a problem within the Virgin Islands Police Department. Instead of engaging in such repair, the Government compounded Anderson's grievances by initiating its surveillance operation. Were we to ignore the Government's retaliation, we would render Mr. Anderson's First Amendment petition right effectively useless. Officials could simply engage in harassment any time an individual filed, or announced his intention to file, a lawsuit against them. This result is hardly consistent with the fundamental principles of orderly protest, which our

519

Constitution sought to preserve by protecting our right petition the government for redress.

In addition to demonstrating that he was engaging in protected activity, Anderson must also show that the Police Department's surveillance of him and his attorney constituted retaliation for his exercise of First Amendment rights. Although *Mt. Healthy* is most often applied in employee dismissal cases, many courts have expanded *Mt. Healthy's* doctrine to different types of official retaliation. *See, e.g., Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40-41 (1st Cir. 1992) (denial of residential site permit); *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) (failure to reappoint prisoners as inmate advisors); *Soranno's Gasco*, 874 F.2d at 1314 (suspension of petroleum permits); *Harrison*, 780 F.2d at 1428 (filing of frivolous condemnation counterclaim against landowners); *Packish v. McMurtrie*, 697 F.2d 23, 26 (1st Cir. 1983) (denial of firefighter's indemnification request); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (transfer of prisoner to another prison). In each of the above cases, the plaintiff was denied a benefit simply because he exercised his First Amendment rights. In this case, Mr. Anderson was denied the benefit of initiating litigation without the harassment of otherwise uncalled for surveillance, simply because he filed a potentially vexatious lawsuit against his former employers. This type of retaliation falls squarely within the *Mt. Healthy* line of cases.

Finally, Anderson must also show that the Government's conduct was motivated by his attempts to commence litigation against the Government and the Department. Based on the district court's factual findings, Anderson should have no problem meeting this prong. The district court found that "the defendants had engaged in surveillance of Peter Anderson and Lee Rohn as a direct result of the lawsuit Mr. Anderson filed." *Anderson*, No. 1996-118, at 8. The Government has not challenged this finding on appeal. Consequently, we must further conclude that Anderson would prevail on the third prong of *Mt. Healthy*, since the Government has effectively abandoned its attempt to come up with a credible reason for investigating or following Mr. Anderson.

In sum, the record demonstrates the likelihood that Anderson would prevail on the merits of a First Amendment retaliation claim

under the three-pronged test set forth by the Supreme Court in *Mt. Healthy*. The fact that Anderson harbored no constitutional right to be free from government surveillance does not affect his claim under this doctrine. What matters is that the Government undertook to visibly and obviously surveil him because he exercised his First Amendment rights. *See Bradley*, 910 F.2d at 1177. Assuming Anderson can demonstrate some form of injury, he can successfully make out a claim for relief.[15]

## B. Irreparable Harm

■ Although the record below demonstrates that Anderson has a viable claim under *Mt. Healthy*, it does not support the district court's injunction. This is so because the district court failed to set forth findings regarding the Government's intention to continue its surveillance in the future. This was error. An injunction is appropriate only where there exists a threat of irreparable harm such that legal remedies are rendered inadequate. *See Beacon Theatres v. Westover*, 359 U.S. 500, 506-07, 79 S. Ct. 948, 954, 3 L. Ed. 2d 988 (1959). To show irreparable harm, the party seeking injunctive relief must at least demonstrate "that there exists some cognizable danger of recurrent violation" of its legal rights. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 898, 97 L. Ed. 1303 (1953). *See also Lyons v. City of Los Angeles*, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

The Government contends that it has terminated its surveillance of Anderson and Lee Rohn. If this is true, an injunction is unnecessary and unsupportable. Our conclusion is not altered by the Supreme Court's statement that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably

---

[15] Anderson's retaliation claim is not to be confused with the separate cause of action that would exist were he to demonstrate that the Government's surveillance interfered with or threatened his ability to proceed with the present lawsuit. *See Howland v. Kilquist*, 833 F.2d 639 (7th Cir. 1987) (discussing right of access claim and retaliation claim separately).

Since Anderson has not indicated how the Government's surveillance hindered his efforts to bring this lawsuit, we will not consider whether or not his speech has been sufficiently "chilled" to merit relief under this separate theory of recovery. In any event, Anderson need not demonstrate such chilling effect to prevail on his retaliation claim under *Mt. Healthy* and its progeny. *See Cate v. Oldham*, 707 F.2d 1176, 1188-89 (11th Cir. 1983). *Accord Newsom v. Norris*, 888 F.2d 371, 378-79 (6th Cir. 1989).

constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690, 49 L. Ed. 2d 547 (1976). In Elrod, the Supreme Court held that public employees had a First Amendment right not to be fired solely because of their affiliation with a political party. Nothing in that case suggests that the Court meant to do away with the traditional prerequisites for injunctive relief simply because First Amendment freedoms were implicated. To the contrary, the Court concluded that injunctive relief was warranted because the plaintiffs' First Amendment injuries were "both threatened and occurring at the time of respondents' motion." *Elrod*, 427 U.S. at 374, 96 S. Ct. at 2690.

In the opinion below, the district court did not address the following questions: (1) whether the government's surveillance is ongoing, and (2) whether there is a credible threat that it will recur in the future. Accordingly, we will remand this case to the district court so that it can make findings, either from the current record or an expanded one, as to whether the Government's surveillance is ongoing and whether there exists a "real or immediate" threat of its reappearance in the near future. If the Anderson is unable to introduce evidence supporting these findings, injunctive relief is inappropriate.

## C. Balance of Hardships

 Because we find the district court has failed to set forth findings supporting a conclusion that Anderson has suffered or is likely to suffer irreparable harm, we need not rule on the scope of the district court's injunctive order. Nevertheless, we do take this opportunity to express our concern that the court's order unduly interferes with the prerogatives of the Virgin Islands Police Department. No doubt, the court may properly enjoin the wrongful surveillance of Peter Anderson and his attorney, assuming Anderson is able to prove the prerequisites for relief. We are less confident, however, about the propriety of an order that forces the Department to seek preclearance any time it wishes to initiate a new investigation of either Ms. Rohn or Mr. Anderson. This preclearance rule interferes with the daily affairs of the Department and provides Rohn and Anderson with a type of immunity to which no other individual is entitled. The past behavior of the

Department and its officials does not indicate that they will exhibit similar behavior in the future. Accordingly, any future injunctive order issued by the district court should dispense with the preclearance requirement.

## V. CONCLUSION

The right to petition the government for grievances is a fundamental component of a just and orderly society. The Police Department of the Virgin Islands severely threatened that right when it erected a substantial surveillance operation in response to reports that Peter Anderson planned to file a employment discrimination suit against the Government and its officers. Although injunctive relief may have been unwarranted in this case, we cannot overemphasize our concern with officials who exercise their power at the expense of private individuals' rights.

Because the district court failed to grant the Government appropriate notice of its intention to consolidate Anderson's hearing with a trial on the merits, we VACATE the district court's permanent injunction. We REMAND this case to the district court to allow it to make findings as to whether the Government's surveillance operation is still ongoing or likely to recur in the future and to render appropriate relief in conjunction with those findings.

BECKER, concurring and dissenting

I join in Parts II, III, IVB, and IVC of the majority opinion and the judgment of the court. I write separately because I disagree with the court's conclusion that Anderson has established a likelihood of success on the merits of his claim that the defendants retaliated against him for filing an employment discrimination lawsuit against them, in violation of his First Amendment right to petition.

I believe that this case is controlled by *Laird v. Tatum*, 408 U.S. 1, 33 L. Ed. 2d 154, 92 S. Ct. 2318 (1972), and *Philadelphia Yearly Meeting of Religious Society of Friends v. Tate*, 519 F.2d 1335 (3d Cir. 1975). As the majority has explained, those cases stand for the proposition that Anderson must claim specific present or future harm in order to have a justiciable "case or controversy." In both *Laird* and *Philadelphia Yearly*, the plaintiffs' claims that their exercise of First Amendment rights was chilled by "the mere existence,

without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose," *Laird*, 408 U.S. at 10, were held to be insufficient to establish the "real or immediate" harm required by Article III. It seems to me that, on the present record, Anderson too has not established sufficient specific present or future harm from the government surveillance to satisfy this requirement.

The court concludes that Anderson's case differs from those presented by *Laird* and *Philadelphia Yearly* because the government's surveillance operation against him and his attorney Lee Rohn was initiated in retaliation for his exercise of protected activity under the First Amendment. In so doing, the Court conflates the government's conduct with the nature of the harm to Anderson. More specifically, the opinion assumes that, because the defendants' surveillance activities were directly targeted at Anderson and Rohn in retaliation for the filing of a lawsuit, Anderson has alleged harm that is more specific than the harm to the plaintiffs in *Laird* and *Philadelphia Yearly*. I disagree.

Like the plaintiffs in *Laird* and *Philadelphia Yearly*, the basis of Anderson's retaliation claim is that the police engaged in surveillance of him in public places. That this surveillance was carried out for unlawful purposes does not change the nature of the harm to Anderson. And as I understand Anderson's case, he claims only that his exercise of his First Amendment right of petition has been chilled. That is not enough to establish a justiciable case.

The retaliation cases cited by the majority support my conclusion. In none of those cases was the harm to the plaintiffs merely speculative; rather, in each case, the government's act of retaliation caused the plaintiffs distinct and specific harm. For example, in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977), the defendant failed to renew the plaintiff's teaching contract in retaliation for speaking with a local radio station about school policies. *See also, e.g., Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40-41 (1st Cir. 1992) (denial of permit in retaliation for political expression); *Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) (failure to reappoint prisoners as inmate advisors in retaliation for complaints about the chairman of

524

the disciplinary board). The majority attempts to fit Anderson's case within this line of cases by stating that "Mr. Anderson was denied the benefit of initiating litigation without the harassment of otherwise uncalled for surveillance, simply because he filed a potentially vexatious lawsuit against his former employers." Opinion at 24. Yet the district court never found that the government's surveillance actually rose to the level of harassment. Rather, the government's conduct, as found by the district court, amounted to no more than surveillance of Anderson and Rohn in public places, and is therefore indistinguishable from *Laird* and *Philadelphia Yearly*.

Perhaps on remand, Anderson can establish that he has suffered some specific harm from the surveillance. There was some evidence at the preliminary injunction hearing of the fear engendered in members of Anderson's family by the surveillance (though no finding on the issue). Evidence (and a finding) along these lines may be sufficient. But on the present record, I see no basis for a preliminary injunction barring the government's surveillance activities against Anderson and Rohn.