**NOT PRECEDENTIAL**

UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1015
_____

RUSSELL LANDE,
                                        Appellant

v.

CITY OF BETHLEHEM;
FRATERNAL ORDER OF POLICE STAR LODGE NO. 20;
DAVID A. STRAWN,
Individually and in his capacity as Lieutenant of the City of Bethlehem Police
Department;
RANDALL MILLER,
Individually and in his capacity as Commissioner of the City of Bethlehem Police
Department
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-07-cv-02902)
District Judge: Hon. Berle M. Schiller
_____

Argued December 15, 2011

Before: SLOVITER, VANASKIE, and GREENBERG *Circuit Judges*

(Filed :January 10, 2012)

Kathryn V. Chandless, Esq. [Argued]
Chandless Law Offices
17 Bishop Hollow Road
Newtown Square, PA 19073
        *Attorney for Appellant*

Suzanne McDonough, Esq. [Argued]
Holsten & Associates
One Olive Street
Media, PA 19063-0000
    *Attorney for Appellees City of Bethlehem, Randall Miller, and David A.*
    *Strawn*

David L. Deratzian, Esq. [Argued]
George S. Kounoupis, Esq.
Hahalis & Kounoupis
20 East Broad Street
Bethlehem, PA 18018-0000
    *Attorneys for Appellees Fraternal Order of Police, Star Lodge 20*

_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Russell Lande, a Bethlehem police officer, sued the City of Bethlehem ("City"), its Police Commissioner, Randall Miller, and Lande's supervisor, Lieutenant David A. Strawn, in the Eastern District of Pennsylvania under 42 U.S.C. §§ 1981, 1983, 1985, 1986 based upon allegations that departmental discipline consisting of two (2) three-day suspensions imposed upon him were in retaliation for protected speech under the First Amendment and in retaliation because of his association with a Hispanic and disabled arrestee. Lande also alleged a conspiracy between the City and the police union (the Fraternal Order of Police, Star Lodge 20 ("FOP")) to violate his federal rights. Lande also presented ancillary state law claims.

2

The Defendants moved for summary judgment on the federal and state law claims. The District Court granted the motion and dismissed all federal claims and declined to exercise supplemental jurisdiction over the state law claims.[1] We will affirm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we will relate only those facts necessary to our analysis.

On April 15, 2005, Lande responded to a call in the Bethlehem Marvine Housing Development. Upon arriving at the scene, Lande found Officer Maczko, Officer Freed, and Seargent Ripper. Officer Maczko had pulled Reynaldo Lopez over for driving without a valid license. The police had cited Lopez for driving without a valid license numerous times before. Lopez is a Hispanic male who is paralyzed in one leg and unable to ambulate without a wheelchair.

Lopez was uncooperative. His brother appeared at the scene and tried to wheel Lopez away. Officer Maczko grabbed the wheelchair and informed Lopez that he was not free to go, at which point Lopez struck Maczko in the chest. A scuffle ensued during which Lopez took hold of his car and refused to let go. Officer Freed struck Lopez in the wrist with his flashlight. Officers Freed and Maczko then handcuffed Lopez.

---

[1] The District Court had jurisdiction over Lande's federal civil rights claims pursuant to 28 U.S.C. § 1331. The District Court had jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

Lande alleges that the officers grabbed Lopez forcibly by his neck and arm, dragging him to the police car. Department policy requires any officer witnessing police misconduct to file a report. None of the officers on the scene, including Lande, filed a misconduct report. Officers Freed and Maczko, however, did file separate use of force reports concerning this incident.

Lopez was charged with aggravated assault, simple assault, terroristic threats, harassment, resisting arrest, disorderly conduct, and driving with a suspended license. The District Attorney's office subpoenaed Lande to appear at Lopez's trial on August 14, 2006. The Department requires officers to respond to such subpoenas and to cooperate with the District Attorney's office. Lande approached Assistant District Attorney ("ADA") John Obrecht on the morning of trial and informed him that, when called to the stand, he would testify that officers used too much force on Lopez. The ADA communicated this potentially exculpatory evidence to the Judge and Lopez's counsel in open court, and ultimately decided to allow Lopez to plead to driving under suspension and disorderly conduct while dismissing the more serious charges. The City and the FOP later determined that Lande's report to Obrecht was meritless because a Department review concluded that no excessive force was used during the Lopez arrest.

About one month after Lopez's trial, Lande and Freed exchanged text messages through the Department's Mobile Data Terminal ("MDT"), a police laptop by which officers communicate. Lande sent Freed a message, accusing him of using excessive force on a cripple in reference to Lopez's arrest. Upon returning to the police station, Freed and Lopez had a brief physical confrontation.

4

The altercation between Lande and Freed led to a disciplinary investigation. Deputy Commissioner Bedics deferred imposing any discipline for the MDT incident pending an investigation concerning Lande's report to ADA Obrecht. Eventually, Lande was charged with violating the Department's Standard Operating Procedure 56(C), "neglect of duty," [2] and 56(H), "interference with the administration of justice," for his conversation with ADA Obrecht and the MDT exchange.

In November of 2006, Lande was called before Deputy Police Commissioner Bedics and Captain Sarnicky to discuss the MDT incident. The FOP's president attended the meeting to represent Lande, as required by the Collective Bargaining Agreement ("CBA") between the City and the FOP. Lande acknowledged that he was given a chance to explain himself. Upon consideration of Lande's past disciplinary history, Lande was suspended for a total of six days to be served in two (2) three-day blocks in different pay periods.

Lande then submitted grievances for the discipline. Lande appealed to the FOP's Executive Board but the FOP decided not to pursue a grievance because the terms of suspension resulted from an agreement Lande made with the City through his attorney, which had not involved the FOP. Lande served the three-day suspensions in May and December of 2007.

---

[2] The City issued an Amended Violation Record that cited to the Police Manual's "failure to report" section rather than the "neglect of duty" section with respect to Lande's report to ADA Obrecht.

5

II.

Lande's § 1983 claim is rooted in his: (1) First Amendment right to free speech; (2) Fourteenth Amendment rights to due process and liberty; and (3) right to equal protection.

A.

Constitutional retaliation claims require a showing that: (1) the plaintiff engaged in constitutionally protected activity; (2) the government retaliated; and (3) the protected activity caused the retaliation. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). A public employee-plaintiff's speech must be on a matter of public concern and spoken as a private citizen to satisfy the constitutionally protected prong of this test. *See Garcetti v. Ceballos*, 547 U.S. 410, 418, (2006); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006). However, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Garcetti*, 547 U.S. at 424.

The unsound premise for Lande's retaliation claim is that he was disciplined on account of his report to the ADA. Contrary to Lande's contention, he was disciplined for his failure to report his claim that excessive force was used in arresting Lopez until the day of Lopez's trial. While it may be that Lande had earlier expressed his concern orally to individuals within the police department, there is no dispute that he never submitted a written report or took other action that reasonably would have resulted in the ADA learning in a timely manner that there was a conflict within the Bethlehem Police Department as to the manner in which Lopez was taken into custody. Because he was

6

not disciplined for the content of his communication to the ADA, but instead for his failure to make a formal report in a timely manner, Lande's retaliation claim fails.

B.

To sustain a procedural due process claim, a plaintiff must establish (1) an interest derived from the Fourteenth Amendment's "life, liberty or property" clause and (2) that the procedures available to him did not provide due process of law. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). Lande had a property interest in his employment by virtue of the CBA. Due process generally requires some form of hearing before depriving an individual of a property interest. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Lande's procedural due process claim fails because he received a pre-suspension hearing. The November, 2006 meeting with Deputy Police Commissioner Bedics and Captain Sarnicky provided an opportunity to present reasons, in person, why he should not be disciplined. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (describing the "essential requirements of due process" as notice and an opportunity to respond).

C.

To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). Because Lande is not a member of a protected class, the claim must be premised on a "class-of-one" theory. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). However, the "class-of-one theory" of equal protection "has

no application in the public employment context." *Id.* at 591. Accordingly, Lande's equal protection claim fails.[3]

III.

Lande's 42 U.S.C. § 1981 claim alleges discrimination and retaliation by the City due to Lande's association with Lopez. Lande's claim fails because a private cause of action cannot be asserted against a municipal employer for a violation of § 1981. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 122 (3d Cir. 2009).

Lande's 42 U.S.C. §§ 1985(2)[4] and 1985(3)[5] claims fail because he cannot establish a conspiracy, a central element of both provisions. Lande admitted that the FOP did not take any action to impede him from giving testimony in favor of Lopez. Likewise, a governmental entity and its agents – such as the Department and individual officers here – cannot conspire because they are considered one and, therefore, the "two

---

[3]Alternatively, Lande has not demonstrated that his suspension was motivated by any discriminatory race or class-based animus based on his association with Lopez. Moreover, there is no direct evidence of intent to discriminate against Lopez due to his race with respect to Maczko's decision to pull Lopez over. The record indicates that Maczko stopped Lopez's vehicle because he knew Lopez was driving without a license, not because of his race.

[4]42 U.S.C. § 1985(2) makes it unlawful for two or more people "[to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

[5]42 U.S.C. § 1985(3) makes it unlawful for two or more people "[to] conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

8

or more persons" requirement is not met. *See, e.g.*, *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991).

A 42 U.S.C. § 1986[6] violation is predicated on a preexisting violation of § 1985. *See Clark v. Clabaugh*, 20 F.3d 1290, 1296 n.5 (3d Cir. 1994). Because Lande cannot demonstrate a § 1985 violation, his § 1986 claim is also without merit.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[6]42 U.S.C. § 1986 provides that: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case . . . ."