750 F.2d 282
 40 Fed.R.Serv.2d 935, 1985-1 Trade Cases 66,422
 PROFESSIONAL PLAN EXAMINERS OF NEW JERSEY, INC. Herbert J.
Connington, Aram C. Hamalian, Edward J. Israel and
Richard Conway
v.
Joseph A. LEFANTE, Commissioner of the Department of
Community Affairs, State of New Jersey, Charles M.
Decker and William H. Connolly, Appellants.
 No. 83-5775.
 United States Court of Appeals,
Third Circuit.
 Argued July 20, 1984.
Decided Dec. 20, 1984.
 
 Irwin I. Kimmelman, Atty. Gen., John J. Ciancia, Asst. Atty. Gen., John J. Chernoski, Deputy Atty. Gen. (argued), Division of Law, Trenton, N.J., for appellants.
 John A. Brogan (argued), Thomas J. Spies, Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for appellees.
 Before SLOVITER, BECKER Circuit Judges, and FULLAM, District Judge*.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The underlying issue on the merits in this litigation is whether certain provisions of New Jersey's Uniform Construction Code Act, enacted in October 1975, and regulations promulgated thereunder are unconstitutional and violate the antitrust laws. The particular issues before us are whether the district court erred in extending its order temporarily restraining the state agency from enforcing the Act against plaintiffs for more than four years without holding any hearing on a preliminary injunction and without making any findings of fact or legal conclusions, and whether the court erred in abstaining pending state court action. We conclude that the district court failed to follow the proper procedures in extending the restraints and improperly abstained from deciding the plaintiffs' constitutional claims.
 
 I.
 
 2
 On October 7, 1975, New Jersey enacted the Uniform Construction Code Act, N.J.Stat.Ann. Sec. 52:27D-119 et seq., (West 1984-85 Supp.) which was intended "to establish and provide for uniform building and construction standards and uniform enforcement policies and practices throughout the entire state." New Jersey State Plumbing Inspectors Ass'n v. Sheehan, 163 N.J.Super. 398, 401, 394 A.2d 1244, 1245 (App.Div.1978). The Department of Community Affairs (DCA) was required to promulgate "a State Uniform Construction Code." N.J.Stat.Ann. Sec. 52:27D-123a (West 1984-85 Supp.). The Act provided that enforcement functions could be carried out either by DCA or by certified municipal officials, see N.J.Stat.Ann. Secs. 52:27D-126 and 128 (West 1984-85 Supp.). It also provided, as interpreted in the regulations, that a municipality could, under certain circumstances, use private agencies for plan review and inspection provided that the private agency was authorized by the DCA. N.J.Stat.Ann. Sec. 52:27D-137 (West 1984-85 Supp.); N.J.Admin.Code tit., 5 Secs. 23-4.12 to 4.15.
 
 
 3
 The DCA adopted a comprehensive regulatory code, the Uniform Construction Code (Code), which contains separate subcodes for specified subjects, such as building, fire protection, plumbing, electrical and energy. N.J.Admin.Code tit. 5, Sec. 23-3. The Code contains regulations providing, inter alia, for the licensing of both municipal enforcement officials and private agencies. N.J.Admin.Code tit. 5, Sec. 23-5.1. The limitations imposed on the role of a private agency under the regulations form the gravamen of plaintiffs' challenge to the regulations.
 
 
 4
 Plaintiff-appellee Professional Plan Examiners (PPE), a private firm, was formed by and employs engineers who had worked for the New Jersey Department of Labor and Industry, Bureau of Engineering and Safety doing plan reviews, until the Bureau was eliminated in 1975. A major portion of PPE's business is reviewing plans that builders are required to submit with their application to begin construction to ascertain whether the Code's requirements have been met. According to PPE, the regulations threaten it with the loss of most of its business. PPE complains that, as interpreted by DCA, a private agency seeking to perform plan review must contract directly with the municipality rather than with the architect or builder, and must be paid by the municipality. It also claims it is disadvantaged because a private agency wishing to perform plan review is required to undertake the field inspection of construction as well, but when the DCA conducts the plan review, it is free to leave the inspections to local municipal officials. Further, it attacks the regulations that exclude a private plan review agency, such as PPE, from conducting Class I plan review (of the largest or most hazardous buildings) in any town or city where the construction officials and all subcode officials are not licensed as Class I.
 
 
 5
 On July 25, 1977, PPE brought suit in the New Jersey Superior Court, Appellate Division, challenging the regulations as unconstitutional under the state and federal constitutions and as creating a monopoly for the DCA in Class I review. The suit was settled by consent order without reaching the merits.[1]
 
 
 6
 On November 28, 1978 PPE, its president, and employees (jointly referred to as PPE) filed their complaint against the Commissioner of the DCA, now Joseph LeFante, and against Charles Decker, a DCA Bureau Chief, and William Connolly, DCA's Director of the Division of Housing & Urban Development (jointly referred to as DCA) in the United States District Court for the District of New Jersey, seeking declaratory and injunctive relief and damages. In Count I of the Amended Complaint PPE alleges the unconstitutionality of the regulations, in Count II PPE challenges the failure to grant their employees licenses, and in Counts III and IV plaintiffs contend that defendants' acts violate the antitrust laws.
 
 
 7
 On the same day, the district court entered a temporary restraining order enjoining enforcement of the regulations against PPE on the basis of affidavits by the individual plaintiffs that set forth the injury to PPE if defendants continued to interpret the statute and regulations and to act so as to prevent PPE from performing plan review on major projects. The hearing on issuance of a preliminary injunction was originally scheduled for December 7, 1978. The district court, with the consent of the DCA, first postponed the hearing to January 9, 1979, and, thereafter in a series of orders, continued to postpone the hearing date for almost three years, still with the consent of DCA. The court also, by a series of extensions, continued the earlier restraints until October 19, 1981 to permit discovery.
 
 
 8
 The docket shows that on August 26, 1981, defendants filed a notice of intent to move to dismiss the complaint for failure to state a claim. On or about October 19, 1981, the court heard argument on the motion to dismiss, but held no hearing on the extension of the "preliminary restraints." On December 18, 1981 the district court denied the motion to dismiss, staying the federal action pending resolution of the plaintiffs' applications for licenses in state administrative proceedings. Again, the original temporary restraints were continued.
 
 
 9
 The plaintiffs were granted licenses by DCA in December 1982. In May 1983 the DCA moved to restore the case to the active calendar, and moved again to dismiss the federal complaint or for summary judgment, to lift the stay, and to remove all restraints. The court denied the motion on September 26, 1983, and continued the stay to allow the state courts to interpret some of the regulations.
 
 
 10
 The September 26, 1983 order stated summarily, "For the reasons stated in the record at the hearing ... 1. The defendant's motion to restore this action to the active calendar is DENIED. 2. The motions for summary judgment and for dissolving temporary restraints previously entered are moot."
 
 
 11
 The only "reasons" stated at the hearing did not relate to the need for temporary restraints or a preliminary injunction but instead related to abstention, and were given during the following colloquy:
 
 
 12
 THE COURT: Where a municipality needs a class one expert to come in because they don't have it, they can't hire private consultants, they must go to the Department of Community Affairs and have their staff, do the work. If they have their own class one HHS, then they may hire an outside consultant.
 
 
 13
 So this says, you can hire where you don't need them, and you may not hire them where you do need them. And nobody can hire outside consultants--
 
 
 14
 MR. CHERNOSKI: We're not saying that, sir.
 
 
 15
 THE COURT: That might raise a different question, not implicating antitrust.
 
 
 16
 MR. CHERNOSKI: Sir, with regard to that, we're not saying--
 
 
 17
 THE COURT: I think we have to have the state law construction first. Has this been construed anywhere in the state? What we just went through?
 
 
 18
 MR. BROGAN: No, your Honor, I'm not aware of any case law construing that.
 
 
 19
 THE COURT: Well, it should be. That's why we stayed this, so we can get an answer. I don't know what the state law is on this, neither do you. You know what the agency's interpretation is. That's all. Get it done. I don't think there's been ground shown to lift the stay. Get it going. Get it going in the state system.
 
 
 20
 ....
 
 
 21
 THE COURT: I'm not interpreting anything, I'm asking questions because I'm trying to find out whether there are state law questions and it seems to me there are. That should be settled before we look at any federal constitutional questions of or [sic] antitrust.
 
 
 22
 App. at 339-40a.
 
 
 23
 The district court issued a memorandum on October 6, 1983, denying plaintiff's motion for an amended order and explaining the order of September 26, 1983.
 
 
 24
 The order as entered did not rule on the motion of defendants for summary judgment. The suggested draft would have the court deny the motion.
 
 
 25
 The order as entered is correct. As pointed out at the hearing, the first question was whether the existing stay should be lifted. Having concluded that defendants failed to show that the stay should be lifted, it remains in effect and the other questions presented were not reached or decided. They were rendered moot.
 
 
 26
 The purpose of the stay was to have the State law questions resolved first by agency proceedings and/or the State courts. This has not been done but was evidently by-passed in a way that leaves those questions unresolved.
 
 
 27
 The order as entered will stand.
 
 
 28
 App. at 9a.
 
 
 29
 DCA contends that the district court erred in continuing the injunction without a hearing and findings of fact; abused its discretion in continuing the injunction after the plaintiffs had been granted licenses; and abused its discretion in abstaining.II.
 
 
 30
 Preliminarily, we address PPE's contention that the district court's order of September 26, 1983 is not appealable. PPE argues that since DCA did not appeal the original order entered November 28, 1978 temporarily restraining it from applying the Act and regulations to plaintiffs, nor did it appeal any of the numerous orders continuing such restraints, DCA's May 1983 motion to vacate the injunction was simply a ploy for extending the time to appeal the original injunction.
 
 
 31
 There appear to be two separate arguments subsumed in the challenge to this court's jurisdiction--one, that the appeal is too late under Rule 4 of the Federal Rules of Appellate Procedure; the other, that the appeal is premature since the order appealed from merely continued in effect the temporary restraining order. We find neither argument persuasive.
 
 
 32
 Appellate courts have jurisdiction over "interlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions ...." 28 U.S.C. Sec. 1292(a)(1). Pursuant to this explicit statutory provision, district court orders refusing to dissolve or amend injunctions are appealable. See, e.g., International Brotherhood of Teamsters Local 249 v. Western Pennsylvania Motor Carriers Association, 660 F.2d 76, 80-81 (3d Cir.1981). Such appeals are taken as of right. 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice p 110.17 (1983).
 
 
 33
 While we are surprised at DCA's continued acquiescence in the continuation of the restraints, it may have so acted, at least in part, because of the pendency of the administrative proceedings regarding the licenses for the individual plaintiffs, an issue which constituted a significant, albeit not the only, issue in this suit. Certainly the grant of licenses to plaintiffs in December 1982 justified the DCA's reexamination of the status of this action. Hence, we see no basis to regard DCA's May 1983 motion to dismiss, to lift the stay and to remove all restraints as a "ploy", nor do we view it as a repetitive motion to redetermine an injunction which may not form the basis of an appeal. See Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 791 (3d Cir.1978). Moreover, we do not regard the court's September 26, 1983 order as an unappealable temporary restraining order. See 9 Moore's, supra p 110.20. It appears that the district court used the terms "injunction" and "restraining order" interchangeably. When a court's refusal to dissolve a temporary restraining order is tantamount to a grant of preliminary injunctive relief, the district court's choice of words is not controlling. Sampson v. Murray, 415 U.S. 61, 86-88, 94 S.Ct. 937, 951-952, 39 L.Ed.2d 166 (1974); San Francisco Real Estate Investors v. Real Estate Investment Trust of America, 692 F.2d 814, 816 (1st Cir.1982). Since a temporary restraining order expires after 10 or 20 days under Fed.R.Civ.P. 65, supplementary orders or extensions are ordinarily treated as injunctions, and we so view the district court's orders.
 
 
 34
 The unusual procedural history of this case distinguishes it from the situation where defendants, based on new affidavits, move to modify a preliminary injunction that had been entered following a hearing. In that situation, illustrated by our opinion in Merrell-National Laboratories, 579 F.2d at 791, the scope of appellate review is ordinarily limited to the propriety of denying the motion to redetermine the injunction. Here, however, there is no date that can be identified when the temporary restraining order became a preliminary injunction, and there is no order or opinion encompassing a determination that such an injunction is warranted. Thus, in determining the propriety of the court's order of September 26, 1983, continuing to restrain DCA from applying the Act and regulations to plaintiffs, we may consider the procedures followed by the district court in extending the original temporary restraining order.
 
 III.
 
 35
 DCA contends that the district court's order of September 26, 1983 continuing the restraints was invalid because the court did so without conducting a hearing or setting out its findings of fact and conclusions of law. As a general principle, the entry or continuation of an injunction requires a hearing. Fed.R.Civ.P. 65; 7 Moore's, supra at p 65.04. Only when the facts are not in dispute, Williams v. Curtiss-Wright Corp., 681 F.2d 161, 163 (3d Cir.1982) (per curiam), or when the adverse party has waived its right to a hearing, 7 Moore's, supra at p 65.04 n. 22, can that significant procedural step be eliminated.
 
 
 36
 There is a basis on this record for viewing this case as falling within both of these exceptions. First, it appears that there was no significant dispute of fact on the issue of irreparable harm before the district court since DCA never filed affidavits opposed to those filed by PPE. DCA does not seriously dispute PPE's contention that it would lose much of its business were the restraints lifted and the Act and regulations, as interpreted, applied to it. If there are other relevant factual issues, they have not been identified by DCA in its presentation to this court. Second, DCA never objected to the lack of a hearing and does not deny that it consented to various orders adjourning the return date. Thus we choose not to rest our decision on the failure of the district court to hold a hearing, although a hearing is clearly contemplated by Rule 65 and is the procedure that should ordinarily be followed.
 
 
 37
 We consider the district court's failure to state the premise of its decision to continue the restraints to be a more substantial deficiency. Rule 52(a) requires that a court issuing a preliminary injunction must set out its findings. It provides that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ.P. 52(a). This requirement is equally applicable to temporary restraints that, through lapse of time, become preliminary injunctions. Maine v. Fri, 486 F.2d 713, 715 (1st Cir.1973); see Granny Goose Foods v. Brotherhood of Teamsters Local No. 70, 415 U.S. 423, 443 n. 17, 94 S.Ct. 1113, 1126 n. 17, 39 L.Ed.2d 435 (1974).
 
 
 38
 The relevant findings and conclusions are those that evince that the moving party has met the standards for the grant of a preliminary injunction. The moving party must show:
 
 
 39
 (1) a reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."
 
 
 40
 In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143 (3rd Cir.1982) (quoting Oburn v. Shapp, 521 F.2d 142, 147 (3d Cir.1975)).
 
 
 41
 There is no district court order, opinion, or statement on the record in this case, after the original temporary restraining order, that reflects its determination with regard to the requisite factors for grant of a preliminary injunction. The original temporary restraining order states merely:
 
 
 42
 And it appearing to this Court that immediate and irreparable harm shall be done to the plaintiffs unless the status quo is protected; and it appearing that the individual plaintiffs are in imminent danger of losing their livelihood, and that the corporate plaintiff is in imminent danger of going out of business, should temporary relief not be granted; and it further appearing that the public interest will not be damaged should temporary relief be granted; and it further appearing that plaintiffs have raised substantial prima facie questions on the merits of their claim: it is
 
 
 43
 ORDERED, until the return date of this order to show cause, and until further order of the Court, as follows:(a) the plaintiffs shall be permitted to continue plan review on all four subcodes during the pendency of this action.
 
 
 44
 App. at 65a.
 
 
 45
 The absence of any further explication of the court's premises is a particularly glaring omission in this case because the restraints were extended for five years. As we stated above, we view the various extensions of the temporary restraining orders as the equivalent of an order granting a preliminary injunction. Even were we to regard the extensions as incorporating the statement from the original temporary restraining order, and were we to regard that statement as the findings and conclusions that Rule 52(a) provides must accompany a preliminary injunction, those findings are inadequate to support a preliminary injunction. The finding of irreparable harm, supported as it is by the affidavits, would suffice but there is no finding or conclusion on the reasonable probability of eventual success in the litigation. The court's statement that "plaintiffs have raised substantial prima facie questions on the merits of their claim" is not sufficient, nor can it be considered a substitute for concluding there is a probability of success on the questions raised.
 
 
 46
 DCA has challenged the legal basis for this action on the grounds that the constitutional claims set forth in Count I are defective because grounded on the equal protection clause, which it claims is inapplicable to differences in treatment between state agencies and private individuals, and on the privileges and immunities clause, which it contends is inapplicable if there are no distinctions between in-state and out-of-state residents. DCA also contends that the antitrust claims set forth in Counts III and IV do not state a claim because states are immune from suit under the decision of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and its progeny. The district court has never addressed these issues.
 
 
 47
 We do not consider the requirement of Rule 52(a) for findings and conclusions as "hypertechnical", the characterization PPE uses for this omission. Brief for Appellees at 39. The requirement that the district court set forth the basis for its grant of a preliminary injunction serves various purposes. Such a statement informs the parties of the rationale for the order. It "defin[es] for future cases the precise limitations of the issues and the determination thereon" and is "an important factor in the proper application of the doctrines of res judicata and estoppel by judgment." Fed.R.Civ.P. 52(a) advisory committee note. Furthermore, it "assist[s] the appellate courts in fulfilling our review function". Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 206, 215 (3d Cir.1983). Although the requirement is not jurisdictional and may be waived by defendant's failure to object to the district court about its lack of findings, id. at 214-15, if the record does not provide a sufficient basis to ascertain the legal and factual grounds for issuing the injunction or if the findings "are inadequate to explain the basis for that ruling or to permit meaningful review" the appellate court must vacate the injunction and remand to the district court for further findings. See H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1238-39 (3d Cir.1980): 5A Moore's, supra p 52.06 at 52-153. Because the district court never addressed the merits of plaintiffs' case and the substantial objections raised thereto by DCA, the order continuing the restraints cannot stand.
 
 
 48
 PPE argues that it is entitled to the continuation of the restraints because of the long lapse of time they have remained in effect. That argument is circular. PPE has been in a unique preferred position because of the existence of the restraints which prevent DCA from enforcing the Act and regulations as to PPE. That does not give PPE an equitable basis for perpetuation of that favored position. Of course, it is free to reapply to the district court for injunctive relief, but the grant of such relief must follow the requisite and established principles and procedures.IV.
 
 
 49
 Our ruling on the restraint issue does not dispose of DCA's challenge to the court's abstention order. In December 1981, the district court abstained and stayed the federal proceedings pending the completion of then ongoing state administrative proceedings with regard to plaintiffs' efforts to be licensed to review plans and to inspect construction under the various subcodes. That abstention order, which is not at issue on this appeal, was apparently based on the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), dealing with non-interference in pending state proceedings.
 
 
 50
 In denying DCA's motion to reopen by its order of September 26, 1983, the district court again determined to abstain. This time, however, there were no pending or incipient state judicial or quasi-judicial proceedings, and although it is not absolutely clear, it appears that the district court abstained and stayed the federal proceedings until the New Jersey state courts determine whether the Code permits PPE to perform plan review on Class I projects for municipalities that do not have a full complement of certified enforcement officials.
 
 
 51
 PPE seeks to justify the September 26, 1983 abstention order under the doctrine of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Pullman doctrine represents an exception to the rule that federal courts should fully adjudicate claims within their jurisdiction, see Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), when it appears that "difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." Hawaii Housing Authority v. Midkiff, --- U.S. ----, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). In such cases, an equitable decision to abstain and to stay proceedings pending state court resolution of those state law issues may both avoid any unnecessary adjudication of the federal constitutional question and prevent "needless friction with state policies...." Pullman, 312 U.S. at 500, 61 S.Ct. at 645.
 
 
 52
 On the other hand, a decision to abstain often imposes a substantial cost in delay, expense and legal uncertainty. See generally Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071, 1085-87 (1974). Therefore, the mere possibility that a state decision might obviate the need for federal constitutional analysis is an insufficient basis for abstention. Hawaii Housing Authority, 104 S.Ct. at 2327. As the Supreme Court has cautioned, "There is a point ... at which the possible benefits of abstention become too speculative to justify or require avoidance of the question presented." Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 481, 97 S.Ct. 1898, 1905, 52 L.Ed.2d 513 (1977). That point has been reached and passed in this case for the following reasons:
 
 
 53
 First, PPE's complaint is based on alleged violations of the Fourteenth Amendment and the antitrust laws. Resolution of the supposedly unsettled question of state law could not obviate the need for resolution of the federal constitutional and statutory issues, but at most would eliminate one of many subsidiary contentions.
 
 
 54
 Second, neither party sought this abstention and, in fact, the parties agree that the regulation at issue precludes PPE from conducting Class I plan review for municipalities that are not fully certified. Thus, there is no unsettled question of state law.
 
 
 55
 Third, one of the principal rationales for Pullman abstention is not applicable in this case. The defending party is an arm of the state and, by its motion to restore this case to the active calendar, sought to have the matter adjudicated in federal court. Therefore, there is little reason to believe that abstention would advance federal-state comity. Instead, the contrary is the case--continuation of the "temporary restraints" and abstention have served here as a means of federal interference in the administration of a state regulatory system.
 
 
 56
 Fourth, the proceedings in this case have already been inordinately protracted. Abstention would lengthen them even more. Moreover, it is uncertain how further state proceedings would be initiated. It is anomalous to expect DCA to institute a proceeding to interpret its own regulation. For its part, PPE, which has received the benefit of the stay on the basis of abstention, has failed to take the initiative to institute new proceedings in some forum in New Jersey to obtain a decision regarding the particular regulation at issue.
 
 
 57
 In Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 329, 84 S.Ct. 1293, 1296, 12 L.Ed.2d 350 (1964), the Supreme Court stated "abstention was unwarranted ... where neither party requested it and where the litigation had already been long delayed...." These circumstances are present here. In sum, abstention in this case amounts to an unwarranted abdication of federal jurisdiction.
 
 
 58
 We conclude that the district court abused its discretion in staying this proceeding for the purpose of abstaining.
 
 V.
 
 59
 DCA argues that we should terminate the litigation, in effect granting the motion to dismiss, on the ground that its challenge to the antitrust claims and the Fourteenth Amendment claims can be determined by us as a matter of law. As we stated above, the district court has not made any rulings involving the merits of this case. We see no reason to pretermit its consideration of these issues in the first instance.
 
 
 60
 We will therefore vacate the September 26, 1983 order, and remand for proceedings consistent with this opinion.
 
 
 
 *
 Hon. John P. Fullam, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The consent order allowed PPE to review plans until the DCA adopted further regulations governing licensing. The scope of the consent decree was the subject of some dispute between the parties. Apparently neither party now contends the state decree is entitled to any res judicata or collateral estoppel effect in this action. In any event, that issue is not presently before us