

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2008

# Bennington Foods LLC v. St Croix Renaissance

Precedential or Non-Precedential: Precedential

Docket No. 07-2313

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Bennington Foods LLC v. St Croix Renaissance" (2008). *2008 Decisions.* Paper 942.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/942

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 07-2254/2313

———————

BENNINGTON FOODS LLC,
d/b/a BENNINGTON GROUP

v.

ST. CROIX RENAISSANCE, GROUP, LLP,

Appellant in 2254

v.

MONTROSE GLOBAL ASSETS, INC.,

Intervenor in D.C./
Appellant in 2313

———————

On Appeal from the District Court of the Virgin Islands
(Division of St. Croix)
(District Court No. 06-cv-00154)
Chief District Judge: Hon. Raymond L. Finch

———————

Argued on December 10, 2007

Before:  SMITH, NYGAARD and ROTH, <u>Circuit Judges</u>

(Opinion filed:  June 9, 2008)

Kimberly L. Boldt, Esquire (ARGUED)
Alters, Boldt, Brown, Rash & Culmo
21 Southeast 5th Street
Suite 200
Boca Raton, FL   33432

       Counsel for Appellee Bennington Foods, LLC,
        d/b/a Bennington Group

Joseph P. Klock, Jr. Esquire (ARGUED)
JuanCarlos Antorcha, Esquire
Epstein, Becker & Green
200 S. Biscayne Blvd
Suite 4300, Wachovia Financial Building
Miami, FL   33131-2398

Joel H. Holt, Esquire
2132 Company Street
Christiansted, St. Croix
USVI,   00820

       Counsel for Appellant St. Croix Renaissance
       Group, Inc.

Kenneth A. Novikoff, Esquire
Rivkin Radler, LLP
Christiansted, St. Croix
USVI,   00820

Warren B. Cole, Esquire
Hunter, Cole & Bennett
1138 King Street, Suite 301
Christiansted, St. Croix
USVI,   00820

Counsel for Appellant Montrose Global
Assets, Inc.

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

St. Croix Renaissance Group, LLP (SCRG), appeals the imposition of a preliminary injunction that would allow Bennington Foods, L.L.C., to remove scrap metal from SCRG's property.  SCRG is challenging the District Court's findings under both the likelihood of success prong and the irreparable harm prong of the preliminary injunction test.

We conclude that this injunction should be vacated because the District Court erred in finding that failure to grant the injunction would cause irreparable harm.

3

## I. **BACKGROUND**

This case arose out of the planned dismantling of an aluminum processing plant on St. Croix, U.S. Virgin Islands. The plant is on property owned by SCRG. Montrose Global Assets, Inc., entered into an agreement with SCRG to find a company to remove the plant structure from the property. Montrose contracted with Bennington Group[1] to remove the metals from the dismantled structure at a set price. SCRG, Montrose, Bennington, and Bradford Welding & Truck Equipment, Inc., then entered into the Dismantling Contract that apportioned responsibility for the various tasks that needed to be done in order for the dismantling to take place. In the clauses that are relevant to this litigation, SCRG was required to obtain the necessary permits for the demolition to take place, and Bennington was required to comply with local laws.

SCRG applied for a Major Coastal Zone Management (CZM) Permit on March 7, 2006. Before SCRG obtained a permit, it requested that Bennington begin pre-demolition work, without verifying that such work could be performed without a permit. SCRG believed that Bennington could harvest the scrap metal on the ground without a permit. Bennington's contractors began this work on April 2, 2006.

On April 26, 2006, the Department of Building Permits informed SCRG that permits, in fact, were needed to perform

---

[1]Bennington does business under a registered, fictitious name as Bennington Group, LLC.

the pre-demolition activities. SCRG verbally instructed Bennington to stop working. Bennington and its contractors complied for about three weeks. They then resumed working, notwithstanding SCRG's directive. The Department of Planning and Natural Resources (DPNR) Division of Permits issued a Stop Work Order on June 12, 2006. On June 15, the St. Croix Committee of the Virgin Islands CZM Commission issued a Cease and Desist order. After a hearing before DPNR, the CZM Commission issued Notices of Violation and Assessment of Civil Penalties to SCRG, Bennington, and Bennington's sub-contractors.

Meanwhile, just after the Stop Work Order was issued on June 13, Montrose determined that Bennington had never provided any proof of insurance as required by the Demolition Contract and that Bennington had defaulted on the contract by failing to abide by the laws of the U.S. Virgin Islands "governing demolition and removal of structures, waste disposal and/or environmental protections" as required by the contract. On June 19, SCRG forcibly evicted Bennington's contractors from the property.

Prior to June 19, Bennington had completed preparations to remove and ship approximately 30,000 tons of scrap metal and 50 tons of copper. These metals are the subject of the instant injunction.

Bennington initiated an arbitration proceeding against SCRG in New York on June 28, 2006, pursuant to the Sales Contract. SCRG responded by filing, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County,

5

Florida, a Complaint/Application To Stay Demand For Arbitration. On September 26, the Florida circuit court judge issued an order granting SCRG's application, finding that neither Bennington nor SCRG was bound by the arbitration clause in the Sales Contract because they were not parties to that contract.

On November 22, 2006, Bennington filed a complaint for damages in the District Court for the Virgin Islands. Bennington then sought a preliminary injunction, allowing it to remove the scrap metal and copper that had already been prepared for removal. The injunction was granted after Bennington amended its complaint to seek equitable relief as well as money damages. SCRG appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291(a)(1). We review an order granting a preliminary injunction for abuse of discretion, the factual findings for clear error, and the determinations of questions of law *de novo*. *See NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## II. <u>DISCUSSION</u>

The District Court found that failing to issue a mandatory injunction would cause irreparable harm to Bennington. Specifically, it found that failure to issue the injunction would harm Bennington's reputation for being able to deliver scrap metal on time. However, a plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others and that this subsequent failure

6

to perform will harm the plaintiff's reputation. *See Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3rd Cir. 1989) ("[t]he availability of adequate monetary damages belies a claim of irreparable injury"), *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3rd Cir. 1982) ("we have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law").

The inability to gain possession of the scrap metal at issue here creates at most a monetary loss. In the event that subsequent failure to deliver scrap metal to others might create a cognizable risk of irreparable harm to the plaintiff's reputation, Bennington has not demonstrated, except by Bennington's president's personal assertions, that the scrap metal business is different from other types of commerce in such a way that normal breach of contract remedies could not provide a remedy. Nor has Bennington identified any contracts to resell the scrap metal which it has been unable to perform, any third parties with whom it has suffered a loss of reputation, or any attempts – futile or otherwise – it has made to fulfill contracts to deliver scrap metal by obtaining it from other sources.

In order to obtain a preliminary injunction we have repeatedly held that the moving party must demonstrate "(1) the reasonable probability of eventual success in the litigation and (2) that the movant will be irreparably injured pendent lite if relief is not granted. Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or

7

denial of the injunction, and (4) the public interest.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989). Moreover, where the relief ordered by the preliminary injunction is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995).

As we find that Bennington has not met this heightened standard and that there is no possibility of irreparable harm on the record before us, there is no need to analyze the other prongs of the test.

Bennington argues, however, that it has a reputation for delivering scrap metal on time and that this reputation will be irreparably harmed if it is not allowed to remove the scrap metal at issue here. In particular, Bennington claims that its dealings with its suppliers in India are particularly dependent on its reputation. The District Court concluded that this represented an irreparable harm analogous to those faced by the plaintiffs in *Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.*, 143 F.3d 800 (3d Cir. 1998) and *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir. 1979). However, neither of those cases is applicable here.

In *Pappan*, the defendant was enjoined from the continued use of trademarks owned by the plaintiff, 143 F.3d at 803, while in *Fitzgerald* the defendant racetrack operator was enjoined from suspending the plaintiff trainer and harness racer for allegedly throwing races, 607 F.2d at 593. In both of those

8

cases the reputation of the plaintiff was directly endangered by the defendant's actions – the misleading use of trademarks and a suspension based on suspicion of cheating can, in and of themselves, harm plaintiffs' reputations.

In contrast, any damage to Bennington's reputation will result only indirectly from SCRG's actions. SCRG is not doing anything (or refraining from doing anything) that will directly harm Bennington's reputation with its suppliers in India. Rather, the claim is a two-step one: (1) because SCRG is not delivering (allegedly breaching the contract), Bennington is unable to deliver, and (2) lack of delivery harms Bennington's reputation with third parties with whom Bennington has contracted to resell the scrap. There is nothing in this case to distinguish it from a myriad of other breach of contract cases. Thus, there is no reason to make the extended causal inferences necessary to find irreparable harm to reputation. Any damage Bennington may suffer as a result of SCRG's alleged breach of contract – to the extent it is not speculative – can be proven as an element of the breach of contract claim against SCRG.

Bennington, however, cites to *Blackwelder Furniture co. of Statesville, Inc. v. Seilig Manufacturing Co., Inc.*, 550 F.2d 189, 197 (4th Cir. 1977), a case in which the trial court denied a preliminary injunction. The Fourth Circuit Court of Appeals reversed, holding that the district court's finding of no irreparable harm was clearly erroneous. *Id.* at 196. In so concluding, the court stated that

> The harm posed to Blackwelder's general goodwill by its inability to fill outstanding and

9

accumulating orders in excess of $15,000 for furniture listed in its catalogues is incalculable not incalculably great or small, just incalculable.

*Id.* at 197.

We are not bound by the holding in *Blackwelder* and we question whether irreparable harm was sufficiently demonstrated there. In addition, we note that *Blackwelder* has been distinguished from other preliminary injunction cases on the basis that *Blackwelder* "involved a manufacturer's refusal to supply its entire product line to a particular retailer, treatment which discriminated against that particular dealer." *Advisory Information and Management Systems, Inc,. v. Prime Computer, Inc.*, 598 Fed. Supp. 76, 78 (M.D. Tenn. 1984). *See also Jack Kahn Music Co., Incl v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 762 (2d Cir. 1979). As we mention above, there is nothing in the record before us to demonstrate that Bennington was unable to fulfill any contracts, was unable to find other sources of scrap metal when the Virgin Islands scrap metal could not be shipped, or lost reputation with any specific customers.

## III. **CONCLUSION**

For the foregoing reasons, we will vacate the preliminary injunction and remand this case to the District Court for further proceedings consistent with this opinion.