NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3246
_____

CORPORATE SYNERGIES GROUP, LLC

v.

GREGORY ANDREWS; SIMONE UR; GERARD DUFFY; ALLIANT INSURANCE
SERVICES, INC.; BARBARA DIGGS,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cv-13381)
District Judge:  Hon. John M. Vazquez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 31, 2019

Before:   JORDAN, GREENAWAY, JR., and NYGAARD, *Circuit Judges.*

(Filed June 4, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Alliant Insurance Services Inc. ("Alliant") and four of its employees, Gregory Andrews, Simone Ur, Gerard Duffy, and Barbara Diggs, appeal the District Court's order issuing a preliminary injunction enforcing a Non-Solicitation and Confidentiality Agreement stemming from those employees' prior employment with Corporate Synergies Group, LLC ("CSG"). For the following reasons, we will vacate the District Court's order and remand for further proceedings.

I.     BACKGROUND

A.     Facts

Alliant and CSG are competitors in the insurance brokerage business, both of them advising clients on risk assessment and insurance products. Andrews, Ur, Duffy, and Diggs previously worked for CSG. Andrews was a "broker of record" for approximately 72 CSG clients, and many of whom were serviced by Ur, Duffy, and Diggs. When employees leave one insurance brokerage firm for another, clients often follow. So, as a condition of employment, CSG required its employees, including Andrews, Ur, Duffy, and Diggs, to sign a "Non-Solicitation and Confidentiality Agreement" (the "Agreement"). (App. at 603-04.)

Relevant here, the Agreement states that former employees may not, for two years, "directly or indirectly": (1) "interfere or attempt to interfere with the business relationships" of CSG; (2) "persuade, or attempt to persuade" CSG clients to discontinue their relationships with CSG; (3) "solicit, call upon … or assist the … soliciting, [or] calling upon" of business from CSG clients; (4) "request, induce or advise … or assist

2

other parties … to request, induce or advise" CSG clients to "withdraw, curtail or cancel" their business with CSG; or (5) "use or disclose the names and/or addresses of any Client … except in the ordinary course of business." (App. at 137-38, 144-45, 151-52, 662-63.) Those restrictions apply with respect to clients that departing CSG employees have worked with during their last 12 months of employment at CSG. By its terms, the Agreement is governed by New Jersey law.[1]

Andrews resigned from CSG on July 2, 2018, and immediately went to work for Alliant. About a month later, Ur and Duffy followed him, as did Diggs another month after that.

Once at Alliant, the former CSG employees had some communications with CSG clients they had worked with during their last 12 months at CSG. The parties dispute the content of those communications, as well as whether the clients or the former employees were the ones who initiated them. It is undisputed, however, that Alliant's Director of Sales, Daniel McCaffrey, contacted CSG clients covered by the Agreement to solicit their business for Alliant, and the former CSG employees attended meetings at which McCaffrey made his sales pitch to some of those CSG clients. McCaffrey also discussed CSG clients with the former employees. After those meetings and conversations, five CSG clients, accounting for more than $500,000 in annual revenue, left CSG and became clients of Alliant.

---

[1] The Agreement did not define the terms "solicit," "induce," or "interfere," however, so the terms must be "strictly construed" against the drafting party, CSG. *In re Miller's Estate*, 447 A.2d 549, 555 (N.J. 1982).

## B.    Procedural History

On August 30, 2018, CSG filed a complaint against Alliant, Andrews, Ur, and Duffy, alleging violations of the Federal Defend Trade Secrets Act and raising claims under New Jersey law, including breach of contract.  Simultaneously, CSG moved for a temporary restraining order and a preliminary injunction to block its former employees' solicitation of its clients.  In the same motion, it also sought expedited discovery.  At oral argument on the motion, the District Court rejected the defendants' contention that Andrews had only spoken with his former clients as a courtesy.  It held that a reasonable inference could be drawn that Andrews was soliciting those clients to come to Alliant. The District Court thus issued an order on September 5, 2018 that temporarily restrained Andrews, and only Andrews, from "directly or indirectly calling upon or soliciting CSG clients or former clients." (App. at 592.)  It said, however, that CSG could move to "enlarge the scope of the injunctive relief[,]" if problems persisted.  (App. at 555.)  It also ordered expedited discovery, which was to proceed in stages, beginning with written discovery, and then moving to document production and depositions.  The Court explained that it would "schedule a preliminary injunction hearing … after expedited discovery [was] completed."[2]  (App. at 593.)

---

[2]  "[T]emporary restraining orders are of short duration and terminate with a ruling on the preliminary injunction[.]" *Nutrasweet Co. v. Vit-Mar Enter., Inc.*, 112 F.3d 689, 692 (3d Cir. 1997).  We view the District Court's decision to temporarily restrain Andrews while envisioning a preliminary injunction hearing, that would occur after expedited discovery was complete, to fulfill those requirements.

4

On September 26, 2018, after written discovery was scheduled to be completed but before document production or depositions had begun, CSG filed an amended complaint adding Diggs as a defendant. At the same time, it filed an application for emergency relief seeking to enlarge the scope of the temporary restraining order, but not to expand its duration. Unlike the amended complaint and its original motion for injunctive relief, that application did not request a preliminary injunction, though it did reference an "anticipated preliminary injunction order." (App. at 688.)

The next day, the District Court ordered the defendants to file an answering brief by noon on September 28 and to bring McCaffrey to a hearing at 2:00 pm on September 28, for the purpose of cross-examination. On the morning of September 28, the Court entered an order stating that the parties could provide "additional live testimony" at the 2:00 p.m. hearing if they informed the Court of their intent to do so by noon.[3] (App. at 80.) At the hearing, McCaffrey testified on both direct and cross-examination, but his testimony was cut short when the hearing adjourned. Following the hearing, the District Court ordered supplemental briefing and scheduled a follow-up hearing for October 2.

At the October 2 hearing, the District Court said that it was "prepared to rule on the requested relief," but it gave the parties the opportunity to address any further issues. (App. at 8.) The defendants took that opportunity and, in addition to arguing on the

---

[3] The order was issued on September 27 but not entered until September 28. The defendants contend they were not aware of their ability to present additional witnesses until 6:45 a.m. on September 28, a contention which CSG does not dispute.

merits against expanding the temporary restraining order, they contended that it was "shocking" that CSG "would ask for expedited discovery[,] … not give any[,] and then run into court and say expand the [temporary restraining order]." (App. at 27.) They also criticized CSG for relying on preliminary injunction cases at a hearing for a temporary restraining order.

After hearing argument, the District Court ruled from the bench. It noted that the "parties strenuously disagree over" what activities the Agreement prohibited and whether its "language … is violative of [New Jersey] public policy."[4] (App. at 30.) It recited the familiar four-factor test for injunctive relief[5] and then said that it disagreed with the defendants' characterization of what would violate the Agreement. After concluding that all four factors were met, the Court said it was issuing a preliminary injunction.[6] That was the first point at which the District Court mentioned that a preliminary injunction

---

[4] In doing so, it noted that "it is a fact-sensitive inquiry[]" as to whether a non-solicitation clause is enforceable. (App. at 32.)

[5] The factors are (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the movant in the absence of relief; (3) balance of the harms between the plaintiff on the one hand and the defendants on the other; and (4) public interest considerations. *Osorio-Martinez v. Attorney Gen.*, 893 F.3d 153, 178 (3d Cir. 2018). The factors are the same for both temporary restraining orders and preliminary injunctions, *PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009), but, temporary restraining orders "typically remain in effect for a maximum of 28 days[,]" 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2947 (3d ed. 2013), and cannot extend indefinitely, *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 444-45 (1974). A preliminary injunction, on the other hand, is effective until a decision has been reached on the merits. Fed. R. Civ. P. 65(a).

[6] The Court did note, however, that it would "not … permit the TRO – I'm sorry, the injunction to extend to prospective clients[.]" (App. at 57.)

6

was even under consideration. When given the opportunity to address the Court following that ruling, the defendants did not object to any defect in the proceedings.

The next day, the District Court entered an order preliminarily enjoining the former CSG employees from violating the terms of the Agreement for a period of two years after their separation from CSG. The order said that "the Court consider[ed] the following actions to be prohibited by [the Agreement's] language. The [employees at issue] cannot attend meetings with [CSG's] clients, with or without another representative of [Alliant] … . In addition, th[ose employees] may not provide information concerning [GSG's] clients to … Alliant's sales representatives, whether in response to the client or not." (App. at 4 n.1.) That ruling had the practical effect of granting the full equitable relief that CSG had sought.

The defendants then brought this interlocutory appeal. We granted a stay of the preliminary injunction pending resolution of the appeal.

## II.    DISCUSSION[7]

The defendants argue that "[t]he preliminary injunction entered by the district court violates basic requirements of due process, misconstrues the plain terms of the parties' [A]greement, and violates public policy under New Jersey law[,]" thereby

---

[7] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1). We review an order granting a preliminary injunction for abuse of discretion, but we review a district court's legal conclusions de novo and its factual findings for clear error. *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178 (3d Cir. 2008).

making the Agreement unenforceable as construed by the District Court. (Opening Br. at 14.) CSG disputes each of these contentions and says that the defendants waived their due process argument. As a threshold matter, we conclude that waiver does not apply. We further conclude that the injunction was issued without proper notice and, thus, contrary to due process. That resolves this appeal, so we need not address the defendants' arguments as to the merits of the preliminary injunction.

## A. The Defendants' Argument Was Not Waived.

CSG says that the defendants are foreclosed from raising for the first time on appeal the due process argument that they failed to raise before the District Court. The defendants assert, however, that "[t]o waive an argument, a litigant must have had an opportunity to make that argument in the first instance." (Reply Br. at 1.)

An argument is not waived when a defendant's first opportunity to challenge a district court proceeding is on appeal. *See Paris v. HUD*, 713 F.2d 1341, 1346-47 (7th Cir. 1983) (finding no waiver when the "appeal [was], in effect, [the party's] first opportunity to object"). When, after testimony and evidence have been given, a court announces that what was understood to be a hearing on a TRO application is instead going to be treated as preliminary injunction, "[n]o objection … at such a late stage in the proceedings could have cured the court's failure to provide notice." *See Anderson v. Davila*, 125 F.3d 148, 158 (3d Cir. 1997) (addressing a district court's decision to treat a preliminary injunction hearing as a trial on the merits); *see also Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997) ("The court never told Rosen that it was considering an injunction. Thus, Rosen had no notice that an injunction might be entered against him, and no fair

8

opportunity to oppose it."). Thus, because the defendants were not given notice that a preliminary injunction was under consideration at the September 28 or October 2 hearings, until the Court declared at the latter hearing its intent to issue that relief, their due process objections have not been forfeited.

CSG contends, however, that the defendants "never raised [the due process] issue with the District Court[,] … never asserted that they had any additional factual matter to present to the Court[,] … were on notice that CSG was seeking a preliminary injunction[,] and had multiple opportunities" to oppose CSG's application. (Answering Br. at 18.) They analogize this case to *United States Department of Labor v. Wolf Run Mining Co.*, in which the Fourth Circuit decided that a defendant had waived its due process claim where "[d]uring the course of the proceedings … [it] never complained about an inadequacy of notice; never complained about an inability to present facts, an affidavit, or a witness; and never complained about an inability to present a legal argument." 452 F.3d 275, 282-83 (4th Cir. 2006).

That argument fails. In *Wolf Run*, unlike in *Anderson*, the court found the defendants had notice. *Id.* at 284. The hearing was for the purpose of considering both a temporary restraining order and a preliminary injunction. *Id.* Hence, the defendants in that case had notice that a preliminary injunction was being considered. *Id.* Here, both the September 28 and October 2 hearings were on an application seeking amendment of a

temporary restraining order.[8]  The difference from *Wolf Run* is significant, and we will reach the merits of the defendants' due process claims.

## B.    The Defendants Were Denied Due Process.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  "[T]he burden on the moving party is particularly heavy[]" when, as here, the preliminary injunction provides the full measure of relief sought in the underlying action.  *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980).

A preliminary injunction may only be issued "on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  That notice requirement is "a fundamental aspect of procedural due process under the Constitution[.]" *Anderson*, 125 F.3d at 156.  Federal Rule of Civil Procedure 65(a)(1) itself, however, does not specify how far in advance or how much notice must be given.  *Id.*  Nonetheless, the Supreme Court has stated that the Rule requires, at the very least, "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 432 n.7 (1974) (citing *Sims v. Greene*, 161 F.2d 87 (3d Cir. 1947)).  "It is equally fundamental that the right to notice and an opportunity to be

---

[8]  Here, while CSG's operative complaint requested a preliminary injunction, its application for emergency relief filed on September 26 did not request a preliminary injunction.  It specifically requested only "[a]n immediate enlargement of the TRO" (App. at 714,) in "anticipat[ion] [of a] preliminary injunction order." (App. at 688.)  The September 28 hearing was specifically for the purpose of considering that application and not the complaint, and the October 2 hearing was specifically called for the purpose of "continu[ing] the TRO hearing[.]" (App. at 81.)

10

heard must be granted at a meaningful time and in a meaningful manner." *Anderson*, 125 F.3d at 156 (citation and internal quotation marks omitted). If a non-movant is not given proper notice, "the preliminary injunction should be set aside even if there were no other ground for doing so." *Sims*, 161 F.2d at 89.

In deciding how much time is required for notice to be adequate, we have indicated that time periods shorter than five days should be imposed "only sparingly[.]" *Anderson*, 125 F.3d at 156-57. And the Supreme Court has cautioned that "informal, same-day notice, desirable though it may be before a restraining order is issued, is no substitute for the more thorough notice requirements which must be satisfied to obtain a preliminary injunction of potentially unlimited duration." *Granny Goose*, 415 U.S. at 432 n.7. Moreover, notice of the possible scope of injunctive relief is critical. *Cf. FTC v. Trudeau*, 579 F.3d 754, 778 (7th Cir. 2009) ("[N]otice to the defendant is imperative, particularly when the court is considering a stiffer injunction than the one currently in force or the one proposed in a party's motion to modify.").

In terms of the opportunity to be heard, "[a]s a general principle, the entry or continuation of an injunction requires a hearing." *Prof'l Plan Exam'rs of N.J., Inc. v. Lefante*, 750 F.2d 282, 288 (3d Cir. 1984). "Only when the facts are not in dispute, or when the adverse party has waived its right to a hearing, can that significant procedural step be eliminated." *Id.* (citations omitted). The hearing must allow for the presentation of evidence to allow for judicial review. *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 112 F.3d 689, 694 (3d Cir. 1997); *see also Sims*, 161 F.2d at 88 (noting the need to be able to present evidence).

11

Here, CSG contends that the defendants did have notice because both CSG's original complaint and its amended complaint, filed after the original temporary restraining order was issued, sought a preliminary injunction, and the parties briefed that issue. The defendants counter that "there was no notice at all" (Opening Br. at 18), because CSG had not requested a preliminary injunction in its application for emergency relief or during oral argument on its motion to expand the temporary restraining order.

We think the defendants have the better of the disagreement. They had no notice that the broad injunctive relief that the District Court ultimately ordered was even under consideration at the September 28 or October 2 hearings, until the District Court on the latter date declared its intent to issue that relief. As the defendants rightly complain, nothing before that point indicated that such relief might be ordered.

The District Court initially entered a temporary restraining order preventing Andrews from "directly or indirectly calling upon or soliciting CSG clients or former clients[.]" (App. at 592.) That temporary restraining order was intended to last while the parties engaged in expedited discovery to prepare for a preliminary injunction hearing. CSG then moved to enlarge the temporary restraining order to cover not only Andrews, but also Ur, Duffy and Diggs, and to bar any rendering of service to covered CSG clients. CSG did not, however, seek to impose the temporary restraining order for a longer period of time. Nevertheless, the District Court decided to enter a full preliminary injunction giving CSG, in effect, all the relief it had sought. Thus, although there were two hearings, the jump from a six-week temporary restraint to a two-year injunction was not reasonably foreseeable, particularly given that the motion the defendants were battling

12

against did not request the expansive relief that the Court ordered.  In addition to the lack of notice concerning the breadth of relief being contemplated, we note our concern about the impracticably short notice given to the defendants to provide evidence.[9]

## III.   CONCLUSION

For the foregoing reasons, we will vacate the preliminary injunction order and remand for further proceedings.  Nothing in this decision is intended to imply how the District Court should decide this matter on the merits after proper notice and hearing.

---

[9] The opportunity to provide additional witnesses at the September 28 hearing arose less than eight hours before their testimony would occur and was thus not a fair chance to prepare for a preliminary injunction.  *See, e.g.*, *Granny Goose*, 415 U.S. at 432 n.7 (stating that "informal, same-day notice" is insufficient); *Sims*, 161 F.2d at 88-89 (setting aside preliminary injunction where the defendant "was given no opportunity to present oral testimony on his behalf except for one witness");  *FTC v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1217 (9th Cir. 2004) ("Because of the irregular procedures employed, Enforma may not have had sufficient notice to object to the court's reliance on [a court expert] until after the court issued the preliminary injunction at the end of the meeting."); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) ("A two-day notice, coupled with thirty minutes for oral presentations can hardly be said to constitute a meaningful opportunity to oppose appellees' motion for preliminary injunction." (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp.*, 887 F.3d 1535, 1538 (11th Cir. 1989))).

13